**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Texas resident,<br><br>**Plaintiff,**<br><br>v.<br><br>**ARNOLD & SMITH LAW, PLLC,** an Oklahoma Professional Limited Liability Company**, TODD W. ARNOLD,** an Oklahoma resident, and **DENNIS J. SMITH,** an Oklahoma resident,<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **3:26-cv-00309-LS** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## PARTIES

**1.** Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person residing in El Paso, Texas, and was located in Texas for all calls alleged herein.

**2.** Defendant ARNOLD & SMITH LAW, PLLC ("A&S") is an Oklahoma Professional Limited Liability Company and may be served at 115 E California Ave, STE 450, Oklahoma City, Oklahoma 73104.

**3.** Defendant TODD W. ARNOLD ("Arnold") is a natural person residing in Oklahoma, partner and co-founder of A&S, and may be served at 115 E California Ave, STE 450, Oklahoma City, Oklahoma 73104.

**4.** Defendant DENNIS J. SMITH ("Smith") is a natural person residing in Oklahoma, partner and co-founder of A&S, and may be served at 115 E California Ave, STE 450, Oklahoma City, Oklahoma 73104.

**5.** Released Party JGW DEBT SETTLEMENT, LLC ("JGW") is marketing arm of

Defendants, and is alleged to physically have placed the phone calls alleged herein Plaintiff's First Amended Complaint.

**6.** A&S, Arnold and Smith are hereinafter collectively referred to as "Defendants".

**JURISDICTION AND VENUE**

**7.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**8.** This Court has pendant jurisdiction over Plaintiff's Texas state-based claims pursuant to 28 U.S.C § 1367.

**9.** The Court has specific personal jurisdiction over Defendants because they intentionally availed themselves to the state of Texas by sending solicitation phone calls to Plaintiff while Plaintiff was located in Texas

**10.** Defendants knew Plaintiff was in Texas when they sent the solicitation phone calls to Plaintiff because Plaintiff and Defendants were, and still are, in active litigation for unwanted phone calls previously sent to Plaintiff. *Cacho v. DMB Financial, LLC et al.*, 3:23-cv-00455 (W.D. Tex. filed Dec. 18, 2023).

**11.** Defendants knew that Plaintiff was located in Texas, that Plaintiff did not consent to solicitation phone calls, and still knowingly targeted Plaintiff in Texas to his Texas area-code phone number.

**12.** Defendants took the affirmative step of emailing Plaintiff a contract while knowing Plaintiff is a Texas resident and was located in Texas at the time Plaintiff was solicited with the phone call and sent the email.

**13.** Defendants had actual knowledge that Plaintiff resides in El Paso, Texas. Plaintiff has previously sued Defendant Arnold & Smith Law, PLLC in prior actions, placing Defendants on

notice of Plaintiff's identity, residence, and contact information well before the calls at issue.

**14.** Plaintiff's claims arise out of or relate to Defendants' Texas contacts because Defendants' telemarketing calls and solicitation activities into Texas caused the precise statutory and privacy injuries alleged. A strict causal nexus is not required where Defendants deliberately targeted Texas residents for profit. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-28 (2021).

**15.** Exercising personal jurisdiction over A&S, Arnold, and Smith **c**omports with traditional notions of fair play and substantial justice. Defendants knowingly solicited Texas residents, invoked the benefits and protections of Texas law, caused injury in Texas, and could reasonably anticipate being hauled into a Texas court for claims arising from those solicitations.

**16.** Venue is proper in the Western District of Texas, El Paso Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the receipt of unlawful telemarketing calls, the resulting injuries, and Defendants' intentional solicitation of Plaintiff while he was located in El Paso County, Texas.

**17.** Plaintiff also brings claims under Texas Business and Commerce Code Chapter 304, including § 304.151(a), which governs caller-identification masking and misrepresentation in telemarketing calls. The Texas Legislature has expressly designated the proper forum for such claims, providing:

> "Venue for an action based on a violation of Subchapter B or C is in the county in which the telemarketing call was made or received." Tex. Bus. & Com. Code § 304.259(1).

**18.** The telemarketing calls giving rise to Plaintiff's Chapter 304 claims were received by Plaintiff in El Paso County, Texas, which lies within this judicial district. Accordingly, venue **is**

statutorily mandated and proper in this District as a matter of law for Plaintiff's Chapter 304 claims, regardless of Defendants' place of incorporation, principal place of business, or physical location.

**19.** Defendants cannot defeat venue by placing telemarketing calls from outside Texas. Where a telemarketing call is received in Texas, and the statute expressly authorizes suit in the county of receipt, venue is proper and non-discretionary under Texas law.

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302**

**20.** "Telephone call" has the meaning assigned by Section 304.002. TBCC § 302.001(6-a).

**21.** "Telephone solicitation" means a call or transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. & Com. Code § 302.001(7).

**22.** An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

**23.** A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation. Tex. Bus. & Com. Code § 302.002.

**24.** A "seller" is defined as "A person who makes a telephone solicitation on the person's own behalf." Tex. Bus. & Com. Code §302.001(5).

**25.** A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

**26.** A separate registration certificate is required for each business location from which a telephone solicitation is made. Tex. Bus. & Com. Code § 302.101(b).

**27.** A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. & Com. Code §302.252(a).

**28.** When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser and, if different, the complete street address of the seller's principal location. TBCC § 302.202(1).

**29.** The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. TBCC § 302.003(b)

**30.** Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

**31.** The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

**32.** Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**33.** The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 304**

**34.** A telemarketer may not make a telemarketing call to a telephone number published on the Texas no-call list more than 60 days after the date the telephone number is published on the current list. Tex. Bus. & Com. Code § 304.052.

**35.** In making a telemarketing telephone call, a telemarketer may not block the identity of the telephone number from which the call is made to evade a device designed to identify a telephone caller. Tex. Bus. & Com. Code § 304.151(a).

**36.** A telemarketer may not cause misleading information to be transmitted to a recipient's caller identification service or device or to otherwise misrepresent the origin of a telemarketing call. Tex. Bus. & Com. Code § 304.151(b)(3).

**37.** A consumer on the Texas no-call list is presumed to be adversely affected by a telemarketer who calls the consumer more than once. The consumer may bring a civil action based on the second or subsequent violation of Subchapter B if the consumer has notified the telemarketer of the alleged violation. Tex. Bus. & Com. Code § 304.257(a)(1).

**38.** If the consumer brings an action based on a violation of Section 304.052 and the court finds that the defendant willfully or knowingly violated that section, the court may award damages in an amount not to exceed $500 for each violation.

**39.** The fact that a claimant has recovered under a private action arising from a violation of

this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 304.005(b).

**40.** Venue for an action based on a violation of Subchapter B or C is in the county in which the telemarketing call was made or received. Tex. Bus. & Com. Code § 304.259(1)

## TEXAS GOVERNMENT CODE § 82.0651 PROHIBITED BARRATRY AND CIVIL LIABILITY

**41.** Texas law strictly regulates the solicitation of legal services and prohibits attorneys and those acting for their benefit from obtaining legal employment through improper solicitation practices, commonly referred to as barratry.

**42.** Barratry includes the solicitation of professional employment by an attorney, or by a person acting on an attorney's behalf, through unsolicited telephone contact or through the use of paid intermediaries, runners, or marketing companies to obtain clients. Tex. Gov't Code § 82.0651; Tex. Penal Code § 38.12.

**43.** Texas Government Code § 82.0651 creates a civil cause of action against any person who commits barratry as defined by Texas Penal Code § 38.12(a) or (b) **or** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct**.**

**44.** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from seeking professional employment through unsolicited in-person or live telephone contact**,** and further prohibits a lawyer from paying, giving, or offering anything of value to a non-lawyer to solicit employment on the lawyer's behalf.

**45.** Texas Penal Code § 38.12 likewise prohibits a person from soliciting professional employment for a lawyer with the intent to obtain an economic benefit, including where such solicitation is conducted by a third party or intermediary acting for the lawyer's benefit.

**46.** Barratry may occur even where the attorney does not personally place the solicitation

call, including where non-lawyer intermediaries are used to solicit prospective clients and funnel them into legal representation for the attorney's financial benefit.

**47.** Texas barratry law regulates the conduct of those engaging in or benefiting from improper solicitation, regardless of the state of residence of the solicited consumer, where the solicitation is directed, managed, or carried out through Texas-based entities or infrastructure**.**

**48.** A person who is solicited for legal services by conduct violating Texas Penal Code § 38.12 or Rule 7.03 may bring a civil action under Texas Government Code § 82.0651 against any person who committed the barratry or knowingly benefited from it, whether or not the solicitation resulted in an executed legal-services contract.

**49.** Under Texas Government Code § 82.0651(c), a person who prevails on a barratry claim is entitled to recover, from each defendant who committed or knowingly benefited from the barratry, a civil penalty of $50,000, in addition to actual damages, reasonable and necessary attorney's fees, and injunctive relief, as authorized by law.

## FACTUAL ALLEGATIONS

**50.** Plaintiff is a Texas resident and was located in Texas at all times relevant to this FAC.

**51.** Defendant A&S is a law firm that contracted with JGW to market their legal services.

**52.** Defendant JGW is a debt settlement company.

**53.** Arnold and Smith are the founding members of A&S.

**54.** All calls alleged herein were made to Plaintiff's cellular telephone 915-200-5482.

**55.** Arnold and Smith are not licensed to practice law in the state of Texas.

**56.** JGW entered into a contractual agreement with A&S, Arnold, and Smith to provide telemarketing services to states directed by A&S, Arnold, and Smith.

**57.** On December 18, 2023, Plaintiff filed a lawsuit against A&S alleging telemarketing

violations substantially similar to the allegations raised in Plaintiff's FAC. *Cacho v. DMB Financial, LLC et al.*, 3:23-cv-00455 (W.D. Tex. filed Dec. 18, 2023).

**58.** On December 22, 2023, Defendant Smith sent an email to Plaintiff informing him he was served with Plaintiff's "bogus lawsuit," made slanderous accusations, and threatened Plaintiff and stated he would create a class action lawsuit to ensure Plaintiff would be facing bankruptcy in the near future. *See Exhibit B.*

**59.** The above email was sent from email address dsmith@arnoldsmithlawfirm.com, with Defendant Todd W. Arnold cc'd with email address tarnold@arnoldsmithlawfirm.com, along with other members in the law firm, Colin Green at colin@arnoldsmithlawfirm.com, Kyle Riddel at kyle@arnoldsmithlawfirm.com, and Corey Spencer at corey@arnoldsmithlawfirm.com. *Id.*

**60.** On April 23, 2025, Plaintiff filed a lawsuit against A&S and JGW alleging TCPA, TBCC, and barratry violations substantially similar to the allegations raised in this FAC. *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142 (W.D. Tex. filed Apr. 23, 2025).

**61.** A&S was served with the complaint and summons in case *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142 on May 05, 2025.

**62.** JGW was served with the complaint and summons in case *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142 on May 8, 2025.

**63.** On October 28, 2025, Plaintiff received three (3) unauthorized telemarketing calls from JGW with 915-221-0456 appearing on his Caller ID.

**64.** Plaintiff missed the first call, and the second call was disconnected after he answered.

**65.** Plaintiff answered the third call from JGW at 1:27 PM. After saying hello, Plaintiff was greeted with "Hey Joshua, this is 'Caleb' from JG Wentworth" and solicited for debt relief services. Plaintiff engaged Caleb of JGW to verify the company(s) responsible for the 3

unauthorized solicitation calls he had received that day.

**66.** Caleb asked Plaintiff if he still owed $30,000 in credit card debt and if he still "**had income in Texas**."

**67.** Caleb then transferred Plaintiff to "'**Luis' of JG Wentworth**." Luis continued soliciting Plaintiff for debt relief services, and asked him for personal identifying and financial qualifying information.

**68.** During the call Caleb informed Plaintiff that there is additional fees for the services included in the monthly payment to JGW; "**you also have an option to, in your case I think you should keep it, but there's $18.00 a month that goes to the legal protection plan, and because of the state of the accounts it makes sense for you to have that included."**

**69.** The calls at issue were not limited to debt settlement services. During the third call described herein on October 28, 2025, JGW affirmatively marketed A&S's legal services, discussed litigation-related risks, recommended enrollment into A&S's legal protection services, and attempted to induce Plaintiff into entering an Attorney-Client Agreement with A&S.

**70.** During the same call and before recommending A&S's Legal Protection Plan, JGW evaluated Plaintiff's potential need for legal representation by specifically asking whether any of Plaintiff's creditors had served him with legal paperwork, identifying which collection agency had initiated legal action, and discussing Plaintiff's exposure to collection lawsuits. After learning Plaintiff had recently received legal paperwork from a creditor, JGW recommended that Plaintiff maintain A&S's Legal Protection Plan because "**of the state of the accounts**," stating that "**it makes sense for you to have that included.**"

**71.** JGW further explained that the Legal Protection Plan would cost an additional **$18.00 per month**, that the charge would be included in Plaintiff's monthly payment, and advised

Plaintiff that, in JGW's opinion, the plan should be maintained because of Plaintiff's financial circumstances.

**72.** After recommending A&S's Legal Protection Plan, JGW obtained Plaintiff's banking information, advised Plaintiff it would process the enrollment paperwork, and thereafter sent the enrollment documents to Plaintiff via email from debtcontracts@jgwentworth.com.

**73.** The enrollment packet sent to Plaintiff during the call included JGW's agreement and A&S's "Attorney-Client Agreement." *See Exhibit A*.

**74.** The Attorney-Client Agreement states, "Arnold & Smith ... will provide certain legal services to Joshua Cacho."

**75.** The Attorney-Client Agreement further states, "Client hereby retains A&S as its attorney to represent and defend Client in any lawsuit or court action commenced against Client."

**76.** After receiving the enrollment documents, Plaintiff rejected Defendants' solicitation, instructed JGW to "cancel everything," advised that he did not want to proceed, and directed Defendants not to contact him again.

**77.** Table A displays calls received from Defendants' agent JGW.

Table A

| No: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| **1** | 10/28/2025 | 9:24 AM | 915-221-0456 | Unauthorized solicitation |
| **2** | 10/28/2025 | 11:27 AM | 915-221-0456 | Unauthorized solicitation |
| **3** | 10/28/2025 | 1:27 PM | 915-221-0456 | Unauthorized solicitation |

**78.** Each call received was a knowing and willful violation because the Defendants knew

from two previous lawsuits that Plaintiff did not want to receive solicitations phone calls from Defendants for any reason.

**79.** On November 1, 2025, Plaintiff called 915-221-0456 to verify if this number was registered and connected to JGW. Plaintiff was greeted by an automated message and was then connected to an agent of a mortgage company not associated with JGW. This shows that the number from which JGW called Plaintiff was a "spoofed" number.

**80.** On November 7, 2025, Plaintiff searched for telephone solicitor registrations for A&S, Arnold, and Smith on the Texas Secretary of State's public records. Neither was registered.

**81.** On January 22, 2026, Plaintiff searched for a telephone solicitation registration for Defendants JGW and A&S at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

**82.** Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration. Plaintiff did not find any registration for Defendant A&S.

**83.** A&S have never been registered to telephone solicit from Texas, or into Texas

**84.** JGW is registered to telephone solicit in Texas and knew A&S, Arnold, and Smith were not registered to telephone solicit in Texas.

**85.** JGW marketed the debt settlement services on their own behalf.

**86.** JGW knowingly marketed the legal services on A&S's behalf because JGW was alerted that A&S was not registered to telephone solicit when JGW was served with the Complaint in *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142.

**87.** The American Bar Association and the State Bar of Texas prohibit attorneys from directly making unsolicited phone calls to prospective clients. A&S used JGW as an indirect means of marketing, circumventing these rules

**88.** No emergency necessitated these calls.

**89.** Plaintiff did not consent to the phone calls alleged herein.

**DENNIS SMITH INTENTIONALLY LIED TO THIS COURT**

**90.** On July 13, 2026, Defendants submitted a Motion to Dismiss ("MTD") Plaintiff's Original Complaint. Dkt. No. 14.

**91.** The MTD contained a "Declaration of Dennis J. Smith" ("Smith Declaration") "pursuant to 28 U.S.C. § 1746." Dkt. No. 14-2.

**92.** Exhibit B to Plaintiff's FAC is a true and correct copy of emails exchanged between Plaintiff, Dennis Smith, Todd Arnold, Colin Green, Kyle Riddel, and Corey Spencer on December 22, 2023.

**93.** The Smtih Declaration declares "I have never communicated with Plaintiff by email, text message, social media, regular mail, or through any other means." Smith Declaration ¶ 44.

**94.** This is blatantly false assertion is contradicted by Plaintiff's Exhibit B in which Smith emailed Plaintiff from dsmith@arnoldsmithlawfirm.com and threatened a class action lawsuit against Plaintiff and to force Plaintiff into "bankruptcy in the near future."

**95.** The Smtih Declaration declares, "Any contacts that Plaintiff attributes to me arise solely form my position with A&S and not from any personal conduct directed toward Texas." Smith Declaration ¶ 37.

**96.** Plaintiff was in Texas when Smith, in his personal capacity, threatened to sue Plaintiff and bankrupt Plaintiff.

**97.** The Smtih Declaration declares, "Prior to this litigation, I had never heard Plaintiff's name and had no reason to know who he was." Smith Declaration ¶ 50.

**98.** As evidenced by Exhibit B, Smith was aware of Plaintiff and had reason to know Plaintiff's name.

**99.** The Smtih Declaration declares, "I did not personally email Plaintiff". Smith Declaration ¶ 104.

**100.** The Smith Declaration declares, I had no personal knowledge that Plaintiff had allegedly received any prior telephone calls." Smtih Declaration ¶ 107.

**101.** The Smith Declaration declares, "Before this lawsuit, I was unaware that Plaintiff claimed to have received any allegedly unlawful telephone calls. Smith Declaration ¶ 109.

**102.** Paragraphs 50, 104, 107, and 109 of the Smith Declaration are blatant lies, established by Exhibit B, made pursuant to the penalty of perjury.

**103.** Smith had actual knowledge of Plaintiff, had personally threatened Plaintiff, and had every reason to know Plaintiff.

**104.** Dennis Smith intentionally lied to this Court and should be sanctioned.

## ARNOLD & SMITH LAW, PLLC, TODD W. ARNOLD, AND DENNIS J. SMITH ARE VICARIOUSLY LIABLE FOR JGW'S TELEMARKETING

**105.** Defendants Arnold and Smith Law, PLLC, Todd W. Arnold, and Dennis J. Smith are vicariously liable for the solicitation calls made by JGW to Plaintiff's phone 5482.

**106.** A&S, Arnold and Smith instructed JGW on what states to call.

**107.** A&S, Arnold and Smith provided JGW with the minimum qualifications to qualify a consumer for the services of A&S, Arnold and Smith, and required the JGW adhere to those qualifications.

**108.** A&S, Arnold and Smith, participated in and approved of the script used by JGW.

**109.** A&S, Arnold and Smith maintained interim control over JGW by determining how many, and under what circumstances, it would accept referrals from JGW.

**110.** A&S, Arnold and Smith controlled the timing and frequency of referrals from JGW so

that A&S, Arnold and Smith would be able to receive and process the referrals.

**111.** A&S, Arnold and Smith provided JGW with its retainer agreement and JGW integrated A&S retainer agreement into the JGW database.

**112.** A&S, Arnold and Smith provided JGW with access to a portal and database that allowed JGW to seamlessly processes referrals made to A&S, Arnold and Smith.

**113.** A&S has previously been sued multiple times by Plaintiff for unlawful telemarketing violations and has actual knowledge that Plaintiff does not want solicitations regarding debt relief or legal services.

**114.** Despite this knowledge, A&S continued its business relationship with debt relief entities and telemarketers that marketed A&S's legal services through unsolicited telephone calls.

**115.** As described above in this Complaint, on December 22, 2023, Defendant Smith sent Plaintiff an email regarding litigation filed against A&S by Plaintiff, in which Defendant Arnold was cc'd. That communication confirmed Defendants Smith and Arnold's knowledge that Plaintiff had previously been solicited through telemarketing promoting A&S's legal services, in which he did not want or need. *See Exhibit B.*

**116.** The above-mentioned communications further confirmed that A&S was aware its legal services were being marketed through telemarketing activities conducted by debt relief companies and related marketing entities.

**117.** A&S knowingly permitted debt relief companies, including JGW, to market and solicit consumers for A&S's legal services through telephone solicitations, including consumers located within the Western District of Texas.

**118.** A&S has now been named in five (5) lawsuits in this very District arising from

telemarketing activities conducted by debt relief companies, marketing its legal services, including *Callier v. Jumpstart Financial, LLC, et al, No. 3:2022cv399 (WDTX, Oct. 31, 2022), Gonzalez v. Jumpstart Financial, LLC, et al, No. 3:2023cv455 (WDTX, Dec. 9, 2022), Cacho v. DMB Financial, LLC, et al, No. 3:2025cv455 (WDTX, December 18, 2023), Cacho v. JGW Debt Settlement, LLC, et al, No. 3:2025cv142 (WDTX April 23, 2025)*, and lastly this lawsuit.

**119.** Despite repeated notice of telemarketing-related allegations, A&S continues accepting potential clients and legal fees generated through debt relief companies and telemarketing activities conducted on A&S's behalf.

**120.** Defendants Smith and Arnold were further placed on notice directly through Plaintiff's prior current lawsuits that JGW and related entities utilized telemarketing activities to market A&S's legal services.

**121.** Nevertheless, A&S continues permitting JGW to promote and telephone solicit consumers for A&S's legal services and failed to repudiate or terminate the conduct described herein, or the relationship with JGW.

**122.** Defendants A&S, Smith, and Arnold cannot allege that they had no knowledge of JGW's unauthorized telemarketing activities in connection with A&S's legal services.

**123.** At all relevant times, A&S knowingly engaged JGW as its telemarketing and client-acquisition agent to solicit consumers by telephone for debt relief and legal services, including A&S's so-called "Litigation Protection" or "Legal Protection Plan."

**A&S, ARNOLD AND SMITH TURNED A WILLFUL BLIND EYE**

**124.** Plaintiff filed multiple lawsuits, gave multiple do not call requests, and made multiple complaints to Defendants A&S, Arnold and Smith.

**125.** As noted by the Declaration of Smtih, Defendants did not take any actions to ensure

that Plaintiff would stop receiving telephone calls.

**126.** A&S, Arnold and Smith turned a blind eye to everything associated with Plaintiff.

**127.** A&S, Arnold and Smith did not put Plaintiff's name and phone number into any database or on to any Do Not Call list.

**128.** Had A&S, Arnold and Smith put Plaintiff's name and phone number on a Do Not Call list, Smith would not have submitted an affidavit to this Court claiming to have never heard of Plaintiff.

**129.** A&S, Arnold and Smith were aware, via multiple lawsuits leading up to the current lawsuit, that Plaintiff did not want solicitation phone calls, yet A&S, Arnold and Smith, with full knowledge allowed solicitation phone calls to be placed to Plaintiff.

**130.** A&S, Arnold and Smith knew, or should have known, that Plaintiff did not want solicitation phone calls, but A&S, Arnold and Smith did not want to know because of its insatiable desire to obtain money by any TCPA, TBCC, and Barratry means necessary.

**131.** Specifically, Plaintiff sued A&S in case *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142, thereby alerting A&S, Arnold and Smith of the unlawful telemarketing actions of JGW.

**132.** A&S, Arnold and Smith took no action, as evidenced by the current lawsuit, and allowed JGW to continue marketing on their behalf without any constraints or oversight.

**133.** A&S, Arnold and Smith have continued to accept referrals from JGW, including Plaintiff, with full knowledge the referral was the result of TCPA violating phone calls.

**134.** A&S, Arnold and Smith ratified the illegal solicitation phone calls of JGW when it kept JGW as an authorized telemarketer, and continued to accept referrals from JGW with the full knowledge of the TCPA violations committed by JGW.

**A&S, TODD W. ARNOLD AND DENNIS J. SMITH'S FINANCING OF THE SOLICITATIONS**

**135.** A&S, Arnold and Smith paid and financed the JGW operation, whether paid on a per-lead, per-retainer, or other compensation basis.

**136.** A&S, Arnold and Smith knew, or should have known, that the payments were made in furtherance of the telemarketing and solicitation of consumers for the legal employment of A&S, Arnold and Smith.

**137.** The funds paid by A&S, Arnold and Smith were necessary to, and were used for, the placement of solicitation phone calls marketing legal services.

**138.** A&S, Arnold and Smith paid for, or financed, the assembly of the retainer package, and the system used to transmit the retainer package that was sent to Plaintiff.

**TODD W. ARNOLD AND DENNIS J. SMITH ARE BOTH INDIVIDUALLY LIABLE FOR BARRATRY**

**139.** Pages 29 - 32 of the enrollment packet provided to Plaintiff by JGW include a separate Attorney-Client Agreement for A&S, which was solicited to Plaintiff during an unsolicited telemarketing call placed by JGW on behalf of A&S.

**140.** The Attorney-Client Agreement appears as a standalone contract bearing A&S's letterhead, titled "ATTORNEY-CLIENT AGREEMENT," and was presented to Plaintiff as part of the same solicitation transaction through which JGW marketed debt settlement and legal protection services.

**141.** The A&S Attorney-Client Agreement expressly states that it "**is the sole and entire agreement between Client**" (Plaintiff) "**and A&S Law**" and was executed by Defendants Arnold and Smith, whose personal signatures appear on the agreement under the firm name

"**Arnold & Smith Law, PLLC,**" with Plaintiff identified by name as the "**Client**."

**142.** Arnold and Smith personally participated in the unlawful solicitation of their legal services by authoring, reviewing, approving, and executing the Attorney-Client Agreement that JGW used as a sales instrument during telemarketing calls to Texas residents, including Plaintiff.

**143.** Arnold and Smith knew and intended that the Attorney-Client Agreement would be marketed and sold through live telephone solicitations placed by JGW, a non-lawyer marketing company, to prospective clients who had not sought legal representation from A&S.

**144.** Arnold and Smith authorized and paid JGW to act as a runner or intermediary to obtain legal employment for A&S by telephone, and provided valuable consideration for those solicitations in the form of per-client fees, recurring monthly legal fees, or other financial benefits generated when consumers enrolled in A&S's legal services.

**145.** Arnold and Smith personally benefitted financially from each client obtained through JGW's telemarketing activities, as A&S's legal fees were automatically deducted and paid on a recurring monthly basis for up to forty-eight (48) months as a direct result of the solicitation calls.

**146.** The solicitation of Plaintiff for A&S's legal services was not incidental and was not initiated by Plaintiff. Plaintiff did not seek legal representation from A&S, did not request contact from A&S, and was solicited solely because Arnold and Smith caused and authorized JGW to initiate live telephone contact for the purpose of obtaining legal employment.

**147.** Arnold and Smith's conduct constitutes barratry under Texas Penal Code § 38.12(a)(2) and (a)(4) because they, with intent to obtain an economic benefit, knowingly paid or authorized the payment of money or things of value to a non-lawyer to solicit legal employment for themselves.

**148.** Arnold and Smith's conduct also violates Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, which expressly prohibits lawyers from (a) soliciting employment through live telephone contact and (b) paying or offering anything of value to a non-lawyer to solicit clients.

**149.** Arnold and Smith cannot shield themselves from liability by acting through their law firm or through third-party marketers. Under Texas law, individual attorneys are personally liable for barratry when they personally authorize, participate in, or ratify unlawful solicitation conduct, regardless of whether the solicitation is carried out by an agent or intermediary.

**150.** Arnold and Smith had actual notice, through prior lawsuits, prior settlement agreements, and repeated consumer complaints, that telemarketing based solicitation of legal services in Texas was unlawful, yet continued to authorize and profit from the same conduct, demonstrating knowing and intentional violations.

**151.** Plaintiff was injured by Arnold and Smith's barratry because he was unlawfully solicited for legal services he did not seek, subjected to intrusive telemarketing, and induced to receive and review an Attorney-Client Agreement transmitted as a direct result of the unlawful solicitation.

**152.** Accordingly, Defendants Arnold and Smith are individually liable under Texas Government Code § 82.0651 for civil damages arising from prohibited barratry, including statutory penalties, actual damages, and attorney's fees.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

**153.** Defendants' telemarketing calls caused Plaintiff the precise injuries the TCPA and Texas telemarketing statutes were enacted to prevent namely, nuisance, invasion of privacy,

and unwarranted intrusion into the daily use of a personal telephone.

**154.** The calls trespassed upon and interfered with Plaintiff's possessory and privacy interests in his cellular telephone by commandeering his device without consent and for Defendants' commercial benefit.

**155.** Defendants' calls intruded upon Plaintiff's seclusion, disrupting his personal time and peace within the sanctity of his private communications.

**156.** As a direct and proximate result of Defendants' unlawful calls, Plaintiff suffered actual and concrete harms, including but not limited to:

(a) invasion of privacy and intrusion upon seclusion;

(b) anger, annoyance, frustration, and emotional distress caused by repeated unsolicited solicitations;

(c) depletion of device resources, including storage capacity, battery life, and data usage;

(d) increased frequency of charging and disruption of normal personal use of Plaintiff's cellular telephone;

(e) loss of time and productivity spent answering, screening, addressing, and attempting to stop the unlawful calls;

(f) disruption to daily activities and peace of mind, including interference with personal communications;

(g) economic injury, including costs associated with maintaining cellular service, data usage, and device wear caused by the unlawful calls; and

(h) statutory injury recognized by the TCPA and Texas telemarketing statutes, which provide damages for the precise invasions of privacy and nuisance harms

suffered by Plaintiff.

**COUNT ONE:**
**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(against A&S)**

**157.** Plaintiff incorporates the preceding paragraphs 1-156 as if fully set forth herein.

**158.** JGW made at least three (3) solicitation sales calls to Plaintiff on behalf of JGW and A&S without A&S having a valid telephone solicitation as required under Tex. Bus. & Com. Code § 302.101.

**159.** JGW made the sales calls while knowing Defendant A&S was not registered to telephone solicit in Texas.

**160.** As a result of Defendants' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code § 302.302(a).

**161.** As a result of Defendants' violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code § 302.302(d).

**COUNT TWO:**
**Violation of Texas Business and Commerce Code § 304.151(b)(3)**
**(Against All Defendants)**

**162.** Plaintiff incorporates the preceding paragraphs 1-161 as if fully set forth herein.

**163.** On January 23, 2026, Plaintiff called 915-221-0456, the number identified on Plaintiff's Caller ID as a result of Defendants' calls. Plaintiff was greeted by a representative from a company that purchases mortgages and stated they had no affiliation with any of the Defendants.

**164.** Defendants' agent JGW masked their telephone number that was transmitted to

Plaintiff's Caller Identification service.

**165.** Plaintiff is entitled to recover statutory damages and other relief as permitted by Tex. Bus. & Com. Code Chapter 304, including damages available for violations of Subchapter D.

**166.** Plaintiff further seeks enhanced damages to the extent the Court finds Defendants acted knowingly or intentionally, as authorized by applicable Texas law.

**COUNT THREE:**
**Violation of Texas Government Code § 82.0651 Civil Liability for Prohibited Barratry**
**(Against All Defendants)**

**167.** Plaintiff incorporates the preceding paragraphs 1-166 as if fully set forth herein

**168.** Barratry is the illegal solicitation of legal services from people who have not sought them out.

**169.** Barratry can occur through direct unsolicited contact by a lawyer or through a hired "runner" or "marketing company" who are paid by lawyers to find and refer clients.

**170.** Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments," specifically prohibits a lawyer from contacting a potential client in a manner that involves unsolicited in-person or live telephone communication for the purpose of seeking professional employment, among other specific prohibitions related to solicitation and payments for referrals.

**171.** Rule 7.03 Key prohibitions include:

1. Contacting a potential client: A lawyer cannot engage in in-person, live telephone, or real-time electronic contact with a prospective client when a significant motive for the contact is to obtain employment.
2. Soliciting employment via other: A lawyer cannot offer or give money, property, or benefits to a non-lawyer to solicit employment from a prospective client.

3. Paying or accepting payment for referrals: A lawyer cannot pay or accept payment for referring a client to another lawyer.

**172.** Plaintiff was solicited for A&S, Arnold, and Smith's legal services by Defendants' agent JGW. Plaintiff did not initiate communication with any Defendants.

**173.** Plaintiff was targeted by Defendants despite not having a preexisting contractual relationship with Defendants.

**174.** Defendants' conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

**175.** Plaintiff was solicited on behalf of Defendants A&S, Arnold, and Smith so that said Defendants would benefit financially.

**176.** Defendants knew or should have known that its authorization to tele-solicit clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

**177.** A person commits an offense if, with intent to obtain an economic benefit the person pays, or gives of offers to "pay, give, or advance" a person money or anything of value to solicit employment. Penal Code Section 38.12(a)(4).

**178.** Defendants A&S, Arnold, and Smith violated Texas Penal Code § 38.12 when they solicited employment for themselves by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

**179.** A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may

file a civil action against any person who committed barratry.

**180.** A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants A&S, Arnold, and Smith jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants and/or their agent(s), employee(s), and/or coworker(s)' calls violate the Texas Business and Commerce, and TX. Gov. Code § 82.0651 Civil Liability for Barratry;

C. An award of $5,000 in statutory damages per violation of the Texas Business and Commerce Code § 304.151(b)(3**)** intentional violations jointly and severally against Defendants for 3 calls

D. An award of $5,000 in statutory damages per violation of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against Defendants for 3 calls;

E. An award of $50,000 in statutory damages per Defendant arising from violations of Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

F. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity; and

G. Such further relief as the Court deems necessary, just, and proper.

August 4, 2026,

Respectfully submitted,

*Joshua Cacho*

Joshua Cacho
Plaintiff, Pro Se
P.O. Box. 26971
El Paso, Texas 79912
407-780-9810
Jcacho1848@gmail.com