**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Texas resident, | § | |
| **Plaintiff,** | § | |
| **v.** | § | **3:26-cv-00309-LS** |
| **ARNOLD & SMITH LAW, PLLC,** an Oklahoma Professional Limited Liability Company**,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**PARTIES**

**1.** Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person residing in El Paso, Texas, and was located in Texas for all calls alleged herein.

**2.** Defendant ARNOLD & SMITH LAW, PLLC ("A&S") is an Oklahoma Professional Limited Liability Company and may be served at 115 E California Ave, STE 450, Oklahoma City, Oklahoma 73104.

**3.** Released Party JGW DEBT SETTLEMENT, LLC ("JGW") is a Nevada Limited Liability Company and may be served via registered agent Wilmington Trust SP Services, Inc at 3993 Howard Hughes Ste 250, Las Vegas, Nevada 89169.

**JURISDICTION AND VENUE**

**4.** This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant were citizens of different states and the amount in controversy exceeded $75,000,

exclusive of interest and costs, at the time Plaintiff filed this action. Plaintiff subsequently settled his claims against another defendant, but that subsequent event does not divest the Court of diversity jurisdiction that existed when this action was filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938).

**5.** This Court has specific personal jurisdiction over A&S because Plaintiff alleges that the solicitation calls were placed from Texas. Each of the three calls displayed telephone number 915-221-0456, bearing a 915-area code associated with El Paso, Texas.

**6.** This Court also has specific personal jurisdiction over A&S because Plaintiff's claims arise from A&S's alleged purposeful contacts with Texas. A&S authorized JGW to offer and facilitate enrollment in A&S's legal services, and JGW exercised that authority by soliciting Plaintiff while Plaintiff was located in Texas.

**7.** A&S knew Plaintiff was a Texas resident before the challenged solicitation. Plaintiff had previously sued A&S and JGW in *Cacho v. JGW Debt Settlement, LLC*, No. 3:25-cv-00142-LS-LE (W.D. Tex. filed Apr. 25, 2025), and A&S had been served in that action months before the October 28, 2025, calls.

**8.** The October 28, 2025, solicitation itself further demonstrated knowledge of Plaintiff's connection to Texas. During the call, JGW asked Plaintiff whether he "still" had income in Texas and thereafter offered and recommended the legal-protection service associated with A&S.

**9.** During the same enrollment process, JGW provided Plaintiff with A&S's Attorney-Client Agreement specifically identifying Plaintiff as the prospective client and providing for A&S to furnish legal representation to Plaintiff.

**10.** The contemplated legal representation concerned Plaintiff, a known Texas resident, and potential creditor litigation against Plaintiff. These circumstances support the exercise of specific

personal jurisdiction because Plaintiff's claims arise out of or relate to A&S's alleged contacts with Texas. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359–62 (2021).

**11.** Exercising specific personal jurisdiction over A&S comports with traditional notions of fair play and substantial justice. A&S allegedly authorized JGW to offer and facilitate enrollment in A&S's legal services, JGW solicited Plaintiff while knowing his connection to Texas, and the resulting enrollment process provided Plaintiff with A&S's Attorney-Client Agreement identifying Plaintiff as the prospective client.

**12.** Venue is proper in the Western District of Texas, El Paso Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's receipt of the challenged telephone solicitations while located in El Paso County, Texas.

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302**

**13.** "Telephone call" has the meaning assigned by Section 304.002. TBCC § 302.001(6-a).

**14.** "Telephone solicitation" means a call or transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. & Com. Code § 302.001(7).

**15.** An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

**16.** A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation. Tex. Bus. & Com. Code § 302.002.

**17.** A "seller" is defined as "A person who makes a telephone solicitation on the person's own behalf." Tex. Bus. & Com. Code §302.001(5).

**18.** A "salesperson" is defined as "A person who is employed or authorized by a seller to

make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

**19.** A separate registration certificate is required for each business location from which a telephone solicitation is made. Tex. Bus. & Com. Code § 302.101(b).

**20.** Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

**21.** The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

**22.** Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**23.** The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## TEXAS GOVERNMENT CODE § 82.0651 PROHIBITED BARRATRY AND CIVIL LIABILITY

**24.** Texas Government Code § 82.0651 provides civil remedies for prohibited solicitation of professional employment involving conduct that violates Texas Penal Code § 38.12(a) or (b), or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

**25.** Texas Penal Code § 38.12(a)(2) provides that a person commits an offense if, with intent to obtain an economic benefit, the person solicits professional employment by telephone for that person or for another.

**26.** Rule 7.03 defines regulated telephone contact to include telephone communication initiated by a lawyer or by a person acting on behalf of a lawyer that involves communication in a live or electronically interactive manner. Rule 7.03 generally prohibits a lawyer from soliciting professional employment from a non-client through such contact, subject to the exceptions provided by the Rule.

**27.** Accordingly, prohibited solicitation may occur even though the lawyer does not personally place the telephone call where a person acting on behalf of the lawyer initiates the regulated telephone contact and solicits professional employment for the lawyer.

**28.** Texas Government Code § 82.0651(c) authorizes a person who was solicited by conduct violating Texas Penal Code § 38.12(a) or (b), or Rule 7.03, but who did not enter into a contract as a result of that conduct, to bring a civil action against a person who committed barratry.

**29.** A person who prevails under § 82.0651(c) may recover from each person who engaged in barratry a $50,000 statutory penalty, actual damages caused by the prohibited conduct, and reasonable and necessary attorney's fees. Tex. Gov't Code § 82.0651(d).

## FACTUAL ALLEGATIONS

**30.** Plaintiff is a Texas resident and was located in Texas at all times relevant to this FAC.

**31.** Defendant A&S is a law firm that provides legal services to consumers referred by JGW and other debt-settlement companies.

**32.** JGW is a debt settlement company.

**33.** On April 25, 2025, Plaintiff filed an action naming both A&S and JGW as defendants and alleging claims arising from telephone solicitations. *Cacho v. JGW Debt Settlement, LLC*, No. 3:25-cv-00142-LS-LE (W.D. Tex. filed Apr. 25, 2025).

**34.** A&S was served with the complaint and summons in case *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142 on May 5, 2025.

**35.** JGW was served with the complaint and summons in case *Cacho v. JGW Debt Settlement, LLC,* No. 3:25-cv-00142 on May 8, 2025.

## A&S'S RELATIONSHIP WITH JGW

**36.** A&S and JGW had an existing business relationship before the calls alleged herein. During the December 15, 2025, hearing in Plaintiff's prior action involving these same parties, the Court stated, based upon A&S's declaration, that "A&S obtains referrals from debt settlement companies." *Cacho v. JGW Debt Settlement, LLC*, No. 3:25-cv-00142-LS-LE (W.D. Tex. Dec. 15, 2025, hearing).

**37.** During that same hearing, A&S's counsel described the relationship between A&S and JGW, stating: "J.G. Wentworth is not a law firm. They're a debt settlement company. And whenever they go into any state . . . if there's a case on file, they have to have a law firm to negotiate. And Arnold and Smith in Texas, in some instances, fills that void."

**38.** That relationship is significant here because JGW already possessed information

connecting Plaintiff to Texas when it solicited him. During the October 28, 2025, call, JGW asked Plaintiff, "you do still have income in Texas, right?" The use of the word "still" supports the reasonable inference that JGW already possessed information connecting Plaintiff to Texas before making the challenged solicitation.

**39.** During that same solicitation, JGW offered Plaintiff a legal-protection service, recommended that he retain it, communicated its recurring cost, and thereafter provided Plaintiff with an enrollment package containing A&S's Attorney-Client Agreement specifically identifying Plaintiff as the prospective client.

**40.** These circumstances support the reasonable inference that A&S was not selected only after JGW completed its solicitation of Plaintiff. Rather, JGW already knew it was dealing with a Texas consumer and operated under a preexisting relationship through which A&S, in applicable circumstances, provided legal services to JGW consumers in Texas.

## DETAILS OF SOLICITATION CALLS

**41.** On October 28, 2025, Plaintiff received three unauthorized telephone solicitation calls from A&S's agent JGW to Plaintiff's cellular telephone number, 915-200-5482**,** with 915-221-0456 appearing on Plaintiff's caller ID.

**42.** Plaintiff missed the first call, and the second call disconnected after Plaintiff answered.

**43.** Plaintiff answered the third call at approximately 1:27 p.m. After Plaintiff said hello, the caller stated, "Hey Joshua, this is Caleb from JG Wentworth," and began soliciting Plaintiff for debt-relief services.

**44.** During the call, Caleb asked Plaintiff whether he still owed approximately $31,000 in credit card and unsecured debt and whether he still had income in Texas.

**45.** Caleb then transferred Plaintiff to "Luis" of JGW. Luis continued the solicitation and

requested personal and financial information to determine Plaintiff's eligibility for JGW's services.

**46.** During the solicitation, Luis recommended the legal-protection service, stating: "you also have an option to, you know, in your case, I think you should keep it, but there's $18 a month that goes to the legal protection plan." Luis further explained that "because of the state of the accounts, it makes sense for you to have that included," while disclosing that the charge was optional.

**47.** Before recommending the legal-protection service, Luis asked Plaintiff whether any of his collection accounts had "served [him] with any legal paperwork or anything." Plaintiff informed Luis that he had recently received such paperwork. Luis later recommended that Plaintiff retain the legal-protection service because of the "state of the accounts."

**48.** During the same enrollment process, JGW sent Plaintiff an enrollment packet from debtcontracts@jgwentworth.com.

**49.** The enrollment packet contained JGW's agreement and A&S's Attorney-Client Agreement.

**50.** A&S's Attorney-Client Agreement specifically identified Joshua Cacho as the prospective client and stated that A&S "will provide certain legal services to Joshua Cacho."

**51.** The agreement further stated: "Client hereby retains A&S as its attorney to represent and defend Client in any lawsuit or court action commenced against Client."

**52.** Table A displays calls received from JGW.

Table A

| No: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| | | | | |

| | | | | |
|---|---|---|---|---|
| **1** | 10/28/2025 | 9:24 AM | 915-221-0456 | Unauthorized solicitation |
| **2** | 10/28/2025 | 11:27 AM | 915-221-0456 | Unauthorized solicitation |
| **3** | 10/28/2025 | 1:27 PM | 915-221-0456 | Unauthorized solicitation |

**53.** A&S and JGW had actual notice before the October 28, 2025, calls that Plaintiff objected to telephone solicitations involving their services. Both had been served months earlier in *Cacho v. JGW Debt Settlement, LLC*, No. 3:25-cv-00142-LS-LE, in which Plaintiff challenged telephone solicitations involving JGW and A&S.

**54.** On January 22, 2026, Plaintiff searched the Texas Secretary of State's telephone-solicitor registration records for A&S, including the available registration-status categories, and found no registration for A&S.

**55.** Plaintiff is unaware of A&S ever holding a Texas telephone-solicitation registration applicable to the solicitations alleged herein.

**56.** JGW marketed its own debt-settlement services during the October 28, 2025 solicitation and also offered and recommended the legal-protection service ultimately identified in the enrollment documents as legal services to be provided by A&S.

**57.** JGW had been served with Plaintiff's prior complaint months before the October 28, 2025 calls and therefore had notice of Plaintiff's allegations concerning the use of telephone solicitation to market A&S's legal services.

**58.** Plaintiff did not consent to the telephone calls alleged herein.

**VICARIOUS LIABILITY OF A&S FOR JGW'S CALLS**

**59.** JGW physically placed the telephone calls alleged herein. Plaintiff alleges that JGW

acted as A&S's agent and within the scope of authority granted by A&S when JGW used its telephone enrollment process to solicit Plaintiff for legal services to be provided by A&S.

**60.** The FCC has long recognized that its rules generally place responsibility upon the party on whose behalf a telephone solicitation is made. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). The FCC subsequently held that a seller that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency" for TCPA violations committed by third-party telemarketers. *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**61.** The FCC further recognized that a seller cannot necessarily avoid responsibility merely by outsourcing its telemarketing to third parties and that vicarious liability may arise under a broad range of federal common-law agency principles, including actual authority, apparent authority, and ratification. *Id.* at 6584–88 ¶¶ 28, 34–37.

**62.** Consistent with that authority, *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129, at *3–4 (W.D. Tex. Nov. 8, 2023), report and recommendation adopted, 2023 WL 8242475 (W.D. Tex. Nov. 28, 2023), recognizes that the essential element of agency is the principal's control or right to control the agent's actions, including the "manner and means" of the telemarketing activity and the authority to provide "interim instructions." *Id.* at *3–4.

**63.** *Guadian* further recognizes that federal common-law agency principles apply to claims under Texas Business and Commerce Code § 302.101. *Id.* at *4.

**A&S ENTRUSTED JGW WITH MATERIAL PORTIONS OF ITS CLIENT-ACQUISITION PROCESS**

**64.** JGW did substantially more than provide consumers with A&S's name or contact information. JGW possessed A&S's Attorney-Client Agreement and used that agreement as part of the process through which it offered A&S's legal services to prospective clients.

**65.** During the October 28, 2025 solicitation, JGW questioned Plaintiff concerning matters relevant to his potential need for legal representation, including whether he had received legal paperwork from creditors and his potential exposure to creditor litigation.

**66.** JGW then recommended the legal-protection service, telling Plaintiff: "you also have an option to, in your case I think you should keep it, but there's $18.00 a month that goes to the legal protection plan, and because of the state of the accounts it makes sense for you to have that included."

**67.** The resulting enrollment documents reflected a recurring $17.99 charge associated with the legal-protection service and contained A&S's Attorney-Client Agreement identifying Joshua Cacho as the prospective client and providing for A&S to furnish the corresponding legal representation.

**68.** Thus, JGW did considerably more than identify A&S as an available law firm. JGW evaluated Plaintiff's circumstances, offered and recommended the legal service, communicated its cost, and provided A&S's contractual instrument through which Plaintiff could retain A&S.

**69.** These facts support a reasonable inference that A&S entrusted JGW with material portions of its client-acquisition process. JGW could offer prospective clients A&S's legal services and facilitate their progression into an attorney-client relationship with A&S.

**70.** This client-acquisition evidence is consistent with *Guadian*, which cited *Salaiz v. Beyond Finance, LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at *4 (W.D. Tex. Sept. 18, 2023), for the conclusion that a direct transfer of an interested consumer to the defendant

supported a reasonable inference that the telemarketers were authorized to find clients for the defendant. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129, at *3 (W.D. Tex. Nov. 8, 2023), report and recommendation adopted, 2023 WL 8242475 (W.D. Tex. Nov. 28, 2023). Here, JGW's alleged role went further: JGW itself offered the legal service, recommended it, communicated its cost, and possessed and provided A&S's contractual instrument.

**ACTUAL AUTHORITY**

**71.** The foregoing facts, considered collectively, support a reasonable inference that JGW acted within the scope of authority granted by A&S when JGW used the October 28, 2025 telephone solicitation to offer and facilitate Plaintiff's enrollment in A&S's legal services.

**72.** JGW possessed and used A&S's Attorney-Client Agreement, offered the corresponding legal service, evaluated Plaintiff's potential need for that service, recommended it, communicated its recurring cost, and facilitated Plaintiff's enrollment.

**73.** These were not activities JGW could perform wholly independent of A&S. A&S determined what legal services it would provide, the terms upon which it would undertake representation, and the representations that could be made concerning A&S and its legal services.

**74.** These circumstances support the reasonable inference that A&S retained the right to provide instructions concerning how JGW could present A&S's legal services during the solicitation. JGW could not decide on its own what legal services A&S would provide, change the terms of A&S's agreement, or make promises about A&S's legal services that A&S had not authorized.

**75.** The manner in which JGW conducted the challenged solicitation is consistent with that

authority. JGW described the service as a "legal protection plan," explained when the service would apply, recommended that Plaintiff retain it based upon his circumstances, communicated its approximate recurring cost, and thereafter provided A&S's Attorney-Client Agreement corresponding to the service JGW had just described.

**76.** These circumstances further support the reasonable inference that A&S's right to provide instructions extended to JGW's presentation of A&S's legal services during telephone solicitations. A&S could instruct JGW what it could and could not say about A&S, what legal services JGW could offer on A&S's behalf, and how those services could be described to prospective clients.

**77.** Accordingly, Plaintiff does not rely merely upon the existence of a contractual or referral relationship between A&S and JGW.

**78.** Rather, Plaintiff alleges that A&S entrusted JGW with the solicitation of prospective clients for A&S's legal services while retaining the right to control and provide interim instructions concerning how A&S's services could be presented during those solicitations. JGW exercised that authority during the October 28, 2025, telephone solicitation alleged herein.

**79.** A&S's continued course of dealing with JGW further supports the reasonable inference that JGW remained authorized to offer and facilitate enrollment in A&S's legal services. Despite receiving specific notice months earlier that Plaintiff alleged JGW was using telephone solicitation to market A&S's legal services, A&S continued its relationship with JGW.

**80.** JGW thereafter remained able to offer A&S's legal services to this same Plaintiff and provide him with A&S's Attorney-Client Agreement as part of the resulting enrollment process.

## APPARENT AUTHORITY

**81.** Alternatively, JGW acted with apparent authority from A&S when it solicited Plaintiff

for A&S's legal services. The FCC recognizes that apparent authority may provide a basis for seller liability even where the seller did not itself physically place the call. *In re DISH Network*, 28 FCC Rcd. at 6586–87 ¶¶ 34–35.

**82.** Plaintiff does not rely merely upon JGW's own statements that it had authority to offer A&S's legal services. JGW possessed and used A&S's own Attorney-Client Agreement as part of the same enrollment process through which JGW offered those services to Plaintiff.

**83.** JGW could not give itself authority to act for A&S. Yet JGW possessed A&S's Attorney-Client Agreement, offered and recommended the legal service described in that agreement, communicated its cost, and then provided the agreement specifically identifying Plaintiff as A&S's prospective client.

**84.** These circumstances reasonably indicated to Plaintiff that JGW was authorized to act for A&S in offering and facilitating enrollment in A&S's legal services. JGW did not merely claim that it worked with A&S; its offer of A&S's legal services was followed by A&S's own Attorney-Client Agreement identifying Plaintiff as the prospective client.

**85.** Plaintiff's belief in JGW's authority was therefore reasonable and based on more than JGW's own statements. It was supported by A&S's own Attorney-Client Agreement, which JGW possessed and used as part of Plaintiff's enrollment in the same legal services JGW had just offered during the solicitation.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

**86.** Defendant's agent JGW's telemarketing calls caused Plaintiff the precise injuries the Texas telemarketing statutes were enacted to prevent namely, nuisance, invasion of privacy, and unwarranted intrusion into the daily use of a personal telephone.

**87.** The calls trespassed upon and interfered with Plaintiff's possessory and privacy interests in his cellular telephone by commandeering his device without consent and for Defendant's commercial benefit.

**88.** Defendant's agent JGW's calls intruded upon Plaintiff's seclusion, disrupting his personal time and peace within the sanctity of his private communications.

**89.** As a direct and proximate result of the unlawful calls, Plaintiff suffered actual and concrete harms, including invasion of privacy, annoyance and frustration, loss of time spent answering and addressing the calls, and disruption of Plaintiff's personal activities and use of his cellular telephone.

## COUNT ONE:

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitor Registration Certificate

**90.** Plaintiff incorporates the preceding paragraphs 1-89 as if fully set forth herein.

**91.** JGW made three telephone solicitations to Plaintiff on behalf of A&S while A&S did not hold the registration certificate required by Texas Business and Commerce Code § 302.101.

**92.** As a result of A&S's violations of Tex. Bus. and Com. Code 302.101, Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code § 302.302(a).

**93.** As a result of A&S's violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code § 302.302(d).

## COUNT TWO:
### Violation of Texas Government Code § 82.0651 Civil Liability for Prohibited Barratry

**94.** Plaintiff incorporates the preceding paragraphs 1-93 as if fully set forth herein.

**95.** Texas Penal Code § 38.12(a)(2) prohibits a person, with intent to obtain an economic benefit, from soliciting professional employment by telephone for that person or for another.

**96.** Texas Disciplinary Rule of Professional Conduct 7.03 further regulates solicitation of professional employment through live or electronically interactive telephone communications initiated by a lawyer or by a person acting on behalf of a lawyer.

**97.** As alleged above, JGW initiated the October 28, 2025, telephone solicitation and, during that solicitation, offered and recommended legal services to be provided by A&S.

**98.** Plaintiff had not sought legal representation from A&S and had no preexisting attorney-client relationship with A&S.

**99.** During the telephone solicitation, JGW evaluated Plaintiff's potential need for legal representation, recommended that Plaintiff retain the legal-protection service, communicated its recurring cost, and thereafter provided Plaintiff with A&S's Attorney-Client Agreement identifying Plaintiff as the prospective client.

**100.** For the reasons alleged above concerning actual and apparent authority, Plaintiff alleges that JGW acted on behalf of A&S when it solicited Plaintiff's professional employment of A&S.

**101.** The solicitation was undertaken for the purpose of obtaining professional employment for A&S for economic benefit. The legal-protection service carried a recurring charge, and JGW provided Plaintiff with A&S's Attorney-Client Agreement through which Plaintiff could retain A&S for the legal services JGW had just offered.

**102.** Plaintiff did not execute A&S's Attorney-Client Agreement and did not enter into an attorney-client relationship with A&S as a result of the solicitation.

**103.** Texas Government Code § 82.0651(c) authorizes a civil action by a person who was

solicited by conduct violating Texas Penal Code § 38.12(a) or (b), or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, but who did not enter into a contract as a result of that conduct.

**104.** Plaintiff therefore seeks the relief authorized by Texas Government Code § 82.0651(d) for the prohibited solicitation alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant A&S as follows:

A. A declaration that the conduct alleged herein violated Texas Business and Commerce Code § 302.101 and Texas Government Code § 82.0651;

B. An award of statutory damages of $5,000 for each violation of Texas Business and Commerce Code § 302.101, as authorized by § 302.302(a);

C. An award of the $50,000 statutory penalty authorized by Texas Government Code § 82.0651(d), together with actual damages caused by the prohibited conduct;

D. An award of all costs recoverable under applicable law; and

E. Such other and further relief as the Court deems just and proper.

October 1, 2026,

Respectfully submitted,

Joshua Cacho

Joshua Cacho
Plaintiff, Pro Se
P.O. Box. 26971

El Paso, Texas 79912
407-780-9810
Jcacho1848@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I caused a true copy of the foregoing to be served to all parties via the CM/ECF.

Joshua Cacho

Joshua Cacho
Plaintiff, Pro Se