**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Texas resident,<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ARNOLD & SMITH LAW, PLLC**, an Oklahoma Professional Limited Liability Company,<br><br>***Defendant.*** | ) | 3:26-cv-309-LS |

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant Arnold & Smith Law, PLLC ("A&S"), by and through its attorney Robert R. Titus of the Titus Law Firm, LLC, moves to dismiss Plaintiff Joshua Cacho's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and respectfully shows the Court as follows.

## INTRODUCTION

This is Plaintiff's third attempt to plead a case against A&S arising from the same three telephone calls, and it fails for the same reason the last two did: A&S did not call Plaintiff. Plaintiff's own allegations identify the callers as "Caleb from JG Wentworth" and "Luis" of JGW, and identify the sender of the enrollment materials as a jgwentworth.com email address. SAC ¶¶ 76–78, 86. Having twice been told that he must plead facts—not labels—showing that A&S controlled JGW's telephone solicitation, Plaintiff has now abandoned his claims against the firm's individual partners, narrowed his case to A&S alone, and recast JGW as A&S's "agent."

But a new label on an old set of facts supplies nothing, and the one fact this case has always lacked—that A&S directed the calls—is still nowhere pleaded.[1]

The SAC rests entirely on a single inference: because the JGW enrollment packet contained an A&S attorney-client agreement, A&S must have controlled JGW's calls. That inference does not follow, and it cannot carry two independent burdens the SAC places on it. It cannot establish personal jurisdiction over an Oklahoma law firm, because specific jurisdiction requires suit-related contacts that the defendant itself creates with Texas, not the unilateral forum conduct of a third party. And it cannot state a claim, because both of Plaintiff's remaining theories—telephone-solicitation registration under Texas Business and Commerce Code § 302.101 and civil barratry under Texas Government Code § 82.0651—require A&S to have made, controlled, or procured the solicitation, which the SAC does not plausibly allege.

Plaintiff's own evidence refutes the premise of his case. The certified transcript of the only call he answered—which the SAC quotes repeatedly but conspicuously declined to attach, and which A&S submits as **Exhibit 1**—shows a consumer who went looking for debt relief, not a law firm that came looking for a client. JGW was returning an online inquiry Plaintiff himself had placed and that an affiliate had routed to JGW; Plaintiff then drove the call from start to finish. He asked JGW to "give me some more information," volunteered that "maybe I might be interested into lookin' into this," chose which of his debts to enroll and which to keep, negotiated

---

[1] The complaint pleads a *right-to-control* theory, not direction-in-fact. At most it alleges that A&S "authorized JGW to offer and facilitate enrollment in A&S's legal services" (SAC at 2 and 3); that A&S "retained the right to provide instructions concerning how JGW could present A&S's legal services during the solicitation" (SAC at 12); that this right "extended to JGW's presentation of A&S's legal services during telephone solicitations" (SAC at 13); and that A&S "entrusted JGW with the solicitation of prospective clients . . . while retaining the right to control and provide interim instructions concerning how A&S's services could be presented" (SAC at 13). These are allegations of a *right* to instruct the presentation of services, pleaded expressly as supporting a "reasonable inference" (SAC at 12 and 13) rather than as direct factual assertions. The complaint nowhere alleges that A&S exercised that control over any call — much less that A&S directed the placement of the calls, which it attributes to JGW (SAC at 9) a party that is dismissed.

a four-year plan at "$425.00 a month," picked his own first-payment date ("let's do November 15th"), and read JGW his bank "routing number" and "[a]ccount number" to enroll. **Ex. 1**, at 4, 8–9, 13–14. The "legal protection plan" he now sues over was disclosed as an "optional" "$18.00 a month" add-on to JGW's program—and in the entire call, the firm Plaintiff chose to sue, Arnold & Smith, is never once mentioned. Only after the enrollment papers hit his inbox did Plaintiff say "cancel everything. I do not want to do this." **Ex. 1**, at 12, 14. That is a consumer's own debt-settlement enrollment with a separate company, not a lawyer's unlawful solicitation of a non-client. The SAC should be dismissed, this time with prejudice.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff alleges he received three calls on October 28, 2025, displaying caller ID 915-221-0456, which he attributes to JGW. SAC ¶¶ 41, 52 (Table A). He missed the first, the second disconnected, and he answered the third. SAC ¶¶ 42–43. The callers identified themselves as "Caleb" and "Luis" of JG Wentworth, and Caleb transferred Plaintiff only to "Luis" of JGW—never to A&S. SAC ¶¶ 43, 45. No A&S employee is alleged to have participated in, or even been connected to, any call.

Although Plaintiff quotes the October 28 call throughout the SAC, he did not attach it; A&S submits the certified transcript as **Exhibit 1**. See SAC ¶¶ 8, 44, 46 (quoting the call). The transcript shows the call was the return of an online inquiry Plaintiff himself made: Caleb opened by "followin' up on an inquiry we received," and a second JGW representative explained he was "following up . . . about a recent inquiry you made online" after Plaintiff had been "transferred over to us through our . . . affiliate AmOne." **Ex. 1**, at 2–3. Plaintiff then asked JGW to "give me some more information" and said "maybe I might be interested into lookin' into this." **Ex. 1**, at 4. Over the next twenty-odd minutes Plaintiff ran the transaction: he chose which debts to enroll

and which to keep, negotiated a four-year term at "$425.00 a month," set his first payment for "November 15th," and gave JGW his bank "routing number" and "[a]ccount number" to draft the payments. Ex. 1, at 7–9, 13–14. JGW disclosed the "legal protection plan" as an "optional" "$18.00 a month" add-on to JGW's own program. Ex. 1, at 12. At no point in the call did anyone mention Arnold & Smith, offer Plaintiff A&S by name, or connect him to A&S. Only after the DocuSign enrollment packet reached his inbox did Plaintiff say "cancel everything. I do not want to do this . . . I don't want you guys to call me anymore." **Ex. 1**, at 14.

The packet JGW sent—emailed by JGW from a jgwentworth.com address, not by A&S—contained JGW's own Client Enrollment Agreement, a debt-resolution contract with a 25% fee payable to JGW, and, separately, a standard A&S attorney-client agreement for the legal defense of enrolled-debt lawsuits. SAC ¶¶ 48–51, 86. Plaintiff did not execute the A&S agreement and did not enter an attorney-client relationship with A&S. SAC ¶ 102. A&S is a referral-based firm that, in applicable circumstances, defends debt-settlement enrollees who are later sued by creditors; its agreement is governed by Oklahoma law and provides for arbitration in Oklahoma. Arnold Decl. ¶¶ 26–32.

Plaintiff has now pleaded this case three times. His original complaint and First Amended Complaint named A&S together with its individual partners, Todd W. Arnold and Dennis J. Smith, and asserted claims under the TCPA and Texas Business and Commerce Code Chapters 302 and 304 in addition to civil barratry. After the A&S defendants moved to dismiss the First Amended Complaint, Plaintiff filed the Second Amended Complaint, which no longer names Arnold or Smith, drops the TCPA and Chapter 304 caller-ID claims, and leaves only two claims against A&S: a § 302.101 registration claim (Count One) and a § 82.0651 civil-barratry claim

(Count Two). SAC ¶¶ 90–104. The defendants and theories have narrowed, but the pleading's core defect has not.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility demands more than a sheer possibility that a defendant acted unlawfully, and the Court need not credit legal conclusions couched as factual allegations, threadbare recitals of a claim's elements, or naked assertions devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678. That principle governs this motion. A plaintiff who seeks to hold one party liable for another's conduct must plead facts making that attribution plausible; the conclusory labels on which the SAC depends—"agent," "authority," "control," and "ratified"—are precisely the kind of "[t]hreadbare recitals" that *Iqbal* instructs the Court to disregard. *Id.* at 678–79.

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. Specific jurisdiction requires suit-related contacts that the defendant itself purposefully creates with the forum State, and a sufficient connection between those contacts and the claims asserted. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). The analysis focuses on the defendant's own forum conduct; the contacts of the plaintiff and of third parties cannot be attributed to the defendant to manufacture jurisdiction. *Id.* at 284–85.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER A&S.

#### A. Specific Jurisdiction Requires Suit-Related Contacts A&S Itself Created With Texas.

A&S is an Oklahoma law firm with no office, no Texas employees, and no physical presence in Texas, and it does not itself make telephone solicitations. SAC ¶ 2; Decl. of Todd W. Arnold ("Arnold Decl.") ¶¶ 6–12. The only Texas conduct the SAC ties to Plaintiff's claims is the three October 28, 2025 calls—and Plaintiff alleges those calls were placed by JGW, not A&S. SAC ¶¶ 41, 59. Specific jurisdiction must therefore rest on contacts A&S itself purposefully directed at Texas, not on the unilateral activity of a third party or on Plaintiff's own residence. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014).

Plaintiff's remaining jurisdictional hooks do not cure this. That A&S allegedly knew Plaintiff was a Texas resident—whether from the displayed 915 area code or from a prior lawsuit, SAC ¶¶ 5, 7, 22—does not establish purposeful direction, because knowledge that a plaintiff resides in and may be injured in the forum is not a contact the defendant itself creates with the forum. *Clemens v. McNamee*, 615 F.3d 374, 379–80 (5th Cir. 2010); *Walden*, 571 U.S. at 285. And Plaintiff's assertion that the calls were "placed from Texas," SAC ¶ 5, rests on nothing but the caller-ID number—which, as shown below, says nothing about where a call originated or who directed it.

**B. JGW's Calls Cannot Be Imputed to A&S Absent Facts Showing a Right to Control the Manner and Means of the Calls.**

Recognizing that it placed no calls, Plaintiff seeks to impute JGW's calls to A&S by labeling JGW A&S's "agent." SAC ¶¶ 59, 71. But for a third party's calls to count as the nonresident principal's minimum contacts, they must both amount to minimum contacts by the caller and be imputable to the principal under Texas agency law—which requires that the principal had "both the right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the assigned task." *Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 769 (S.D. Tex. 2022). Courts in this Circuit "decline[] to find an agency

relationship based on 'the mere fact that telemarketing calls were made on behalf of'" the nonresident defendant; conclusory allegations that calls were made "on behalf of" a defendant do not establish the requisite control. *Id.* Where courts have imputed a telemarketer's calls, it was on concrete allegations of control over the manner and means of the calls—for example, a marketing agreement dictating how, when, and whom the telemarketer could call. *Id.*

The SAC pleads no such facts. It does not allege that A&S supplied Plaintiff's number, selected him for a call, instructed JGW when or whom to call, drafted or approved JGW's script, configured JGW's dialing system or caller ID, or otherwise controlled how JGW conducted the solicitation. At most, the SAC alleges that A&S could control what JGW "could and could not say about A&S" and "what legal services JGW could offer on A&S's behalf." SAC ¶¶ 74–76. But control over the content of a referral partner's description of A&S's services is not control over the manner and means of JGW's telephone campaign—the dialing, targeting, timing, and scripting of the calls themselves—which is what *Rogers* requires before a telemarketer's calls may be imputed to a non-caller. 636 F. Supp. 3d at 769. The SAC's own account confirms the point: it pleads that A&S "obtains referrals from debt settlement companies" and that, where a debt-settlement enrollee is sued, A&S "fills that void" by defending the suit. SAC ¶¶ 66–67. That describes a referral relationship, not a right to direct JGW's telemarketing; and a business or referral relationship is not an agency relationship. The accompanying declaration confirms the absence of control: A&S did not place the calls, did not select Plaintiff, did not supply his number or any script, did not configure JGW's dialing or caller-ID systems, gives JGW no interim instructions, and has no right to control the manner and means of JGW's telemarketing. Arnold Decl. ¶¶ 13–26.

The displayed 915 area code adds nothing. A number on a caller ID does not show where a call was placed from or that A&S directed anything into Texas; courts are "reluctant to find jurisdiction based only on . . . phone calls because . . . technology now permits an individual anywhere in the world to be reached by a single telephone number." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 480 (E.D. Tex. 2019). And Plaintiff's own presence in Texas is "a consequence of Plaintiff's . . . relationship with the forum and not any action that [A&S] took to establish contacts with the forum." *Id.* Because the only forum conduct is JGW's, and the SAC pleads no facts making that conduct imputable to A&S, the Court lacks specific jurisdiction. *Walden*, 571 U.S. at 284–86.

### C. *Ford Motor* Does Not Supply the Missing Purposeful Contacts.

Plaintiff invokes *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), for the proposition that his claims need only "arise out of or relate to" A&S's forum contacts. SAC ¶ 10. *Ford* does relax the *connection* half of the specific-jurisdiction test, holding that a strict causal link is not required. 592 U.S. at 362. But *Ford* did not touch the *threshold* requirement on which this motion turns—that the defendant have "purposefully avail[ed] itself of the privilege of conducting activities" in the forum in the first place. *Id.* at 359. Indeed, *Ford* itself cautioned that *Walden* controls where, as the defendant contends here, the defendant "had never taken any act to form a contact of [its] own" with the forum. *Id.* at 370–71. *Ford* arose from a "veritable truckload" of deliberate in-state contacts—dealerships, advertising, and service networks that cultivated the forum market for the very vehicles at issue. *Id.* at 365. A&S's alleged conduct is nothing of the kind: the SAC identifies no deliberate, suit-related Texas contact A&S itself made. *Ford*'s relate-to standard presupposes a forum contact to relate *to*; it cannot manufacture the purposeful conduct the SAC fails to plead.

**D. Merely Appearing in a Form Agreement JGW Transmitted Into Texas Is Not a Contact A&S Created.**

The SAC's fallback is that, because A&S's attorney-client form appeared in JGW's packet, A&S must answer in Texas. Settled minimum-contacts law forecloses that theory. A contract with a forum resident, standing alone, confers no jurisdiction: "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts . . . the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). The Fifth Circuit applies that rule even to defendants far more tied to Texas than A&S: "merely contracting with a resident of the forum state does not establish minimum contacts," and "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311–12 (5th Cir. 2007). Nor does "[a]n exchange of communications in the course of developing and carrying out a contract . . . by itself[] constitute the required purposeful availment," for otherwise "jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Id.* at 312. So too in *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009), where the court found no specific jurisdiction even though the nonresident held a ten-year contract with Texas residents, exchanged sales orders and commission payments with Texas, and sold to Texans—because "merely contracting with a resident of the forum state does not establish minimum contacts" and "[j]urisdiction must not be based on the fortuity of one party residing in the forum state."

A&S's connection to Texas is far thinner than the contacts rejected in those cases. A&S negotiated nothing with Plaintiff, performed nothing in Texas, and sent nothing to Texas; its standard engagement form reached Plaintiff only because a third party, JGW, chose to email it—precisely "the unilateral activity of another party or a third person" that cannot supply the

defendant's contacts. *Burger King*, 471 U.S. at 475. Plaintiff never even signed the form, SAC ¶ 102, so there is not even a contract to analyze. And the form is "governed by Oklahoma law and provides for arbitration in Oklahoma," Arnold Decl. ¶ 32—provisions that "indicate rather forcefully" that A&S did not direct its activities at Texas and that any engagement was centered in Oklahoma. *Moncrief*, 481 F.3d at 312. This is an easier case than *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), where an Oklahoma defendant that contracted with a Texas company and mailed agreements and checks into Texas still lacked the contacts needed for specific jurisdiction. If a signed, negotiated, performance-bearing contract is not enough, an unsigned form a third party forwarded into the forum cannot be.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER CHAPTER 302.

### A. Plaintiff Has No Direct Right of Action Under § 302.101, and His $5,000-Per-Call Civil-Penalty Demand Under § 302.302(a) Is Not Privately Recoverable.

Section 302.101 requires a "seller" to hold a registration certificate before making a telephone solicitation to a Texas purchaser, but it creates no direct private cause of action. Tex. Bus. & Com. Code Ann. § 302.101 (West). A private plaintiff must instead proceed through § 302.303, which makes a Chapter 302 violation "a false, misleading, or deceptive act or practice" and provides that "[a] public or private right or remedy prescribed by" the DTPA "may be used to enforce this chapter." Tex. Bus. & Com. Code Ann. § 302.303 (West). A&S does not contend that § 302.303 forecloses private enforcement altogether; a plaintiff who pleads the statute's elements and resulting DTPA damages may sue. See *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *7 (W.D. Tex. July 15, 2024). But a § 302.303/DTPA claim lies only where the violation is a producing cause of the plaintiff's "economic damages or damages for mental anguish." Tex. Bus. & Com. Code Ann. § 17.50(a) (West). Plaintiff's claim

therefore rises or falls on the solicitation and agency elements addressed in Parts II.B–C below, not on the enforcement route.

What Plaintiff cannot do is recover the relief he demands. The SAC seeks a $5,000-per-call civil penalty under § 302.302(a). SAC ¶¶ 92, 100(B), Prayer ¶ B. Whether a *private* plaintiff may recover that penalty—as opposed to the economic and mental-anguish damages the DTPA authorizes—remains unsettled; the court in *Callier* found it "premature" to decide the question and made "no finding," noting only that "[s]ome courts" had allowed it. 2024 WL 3418778, at *7 n.3. The § 302.302 penalty is a public enforcement remedy; § 302.303(b) channels private plaintiffs to the DTPA's remedial scheme, which measures recovery by actual economic or mental-anguish damages, not a fixed per-call penalty. The Court should accordingly dismiss or strike Plaintiff's demand for the § 302.302(a) penalty and his derivative declaratory demand, leaving any surviving § 302.101 claim limited to DTPA damages Plaintiff can actually prove.

**B. Plaintiff's Own Transcript Shows the Calls Were Not an Unlawful "Telephone Solicitation."**

A Chapter 302 plaintiff must plausibly allege that the challenged calls were "telephone solicitations"—a call "initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7); *Dukes v. DirecTV LLC*, No. 3:16-CV-1418-G, 2016 WL 11956532, at *3 (N.D. Tex. Nov. 7, 2016). Two features of the definition defeat the claim as to A&S, and the certified transcript (**Ex. 1**) establishes both.

First, the call was not "initiated . . . to induce" a purchase; it was a return of Plaintiff's own online debt-relief inquiry, routed to JGW "through [its] . . . affiliate AmOne," after which Plaintiff asked JGW to "give me some more information," negotiated terms, and provided his bank information to enroll in JGW's debt-resolution program. **Ex. 1**, at 2–4, 13. A call a consumer sets in motion and then drives to enrollment is not a seller-initiated solicitation.

Second, even crediting the SAC's allegation that JGW "offered and recommended" a "legal protection plan," SAC ¶¶ 46, 117, the transcript shows that the subject of the call was JGW's own debt-settlement service and that JGW expressly disclosed the legal-protection plan as an *optional* $18-per-month add-on. **Ex. 1**, at 12. Plaintiff himself concedes that JGW "marketed its own debt-settlement services." SAC ¶ 117. An optional add-on disclosed by a separate company during the enrollment of that company's own product is not a call A&S initiated to induce the purchase of A&S's services. Because a document a plaintiff attaches to his complaint controls over contrary conclusory allegations, the § 302.101 claim fails on its own exhibit.

**C. The SAC Does Not Plausibly Allege That JGW Made the Calls as A&S's Agent.**

Even if a cognizable solicitation were pleaded, the § 302.101 claim depends on attributing JGW's calls to A&S, because A&S concededly placed no calls. A seller who does not itself place calls "does not necessarily *initiate*" them and may be liable only vicariously, under federal common-law agency principles. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013). The dispositive inquiry is "the principal's control over the agent's actions," including the right to control the "manner and means" of the telemarketing and to give "interim instructions." *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129, at *3–4 (W.D. Tex. Nov. 8, 2023).

The decisions Plaintiff relies on do not help him; they sink his claim. Every one of them turned on a specific, pleaded fact of control, direct transfer, or contract issuance—a fact the SAC conspicuously lacks—and each is non-binding and of limited persuasive weight. In *Guadian*, the plaintiff pleaded that the defendant "instructed [the telemarketer] on what states to call, what hours to call, and what to say," supplied the hardware and software, gave lead-qualifying

"interim instructions" and lead-volume limits, and that the telemarketer transferred consumers *directly to the defendant's own representative* and entered their data into the defendant's systems. 2023 WL 7393129, at *3–4. In *Salaiz v. Beyond Finance, LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at *4 (W.D. Tex. Sept. 18, 2023), the telemarketer collected the plaintiff's financial information and "transferred [him] to a loan specialist" *employed by the defendant*—a direct hand-off to the principal that created the inference of authority. And in *Forteza v. Pelican Investment Holdings Group, LLC*, No. 4:23-CV-401-ALM-KPJ, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023), the non-calling principal itself *issued the written contract* to the consumer and bore its substantive obligations. Plaintiff's own default-judgment authority is no different: *Callier v. Tip Top Capital Inc.*, No. EP-23-CV-437-KC, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024), rested on uncontested allegations of the defendant's "personal oversight and direction of the phone calls."

None of that is pleaded here. Plaintiff was transferred only from "Caleb" to "Luis"—*both of JGW*—and never to A&S; no A&S representative ever spoke with him, entered his information into any A&S system, or issued him a contract; and the A&S form reached him only afterward, emailed by JGW from a jgwentworth.com address. SAC ¶¶ 45, 86; Arnold Decl. ¶¶ 29–31, 38. The later transmission of a standard form is the opposite of the manner-and-means control, direct transfer, or contract issuance those cases required. The certified transcript confirms the point from the other direction: across the entire call, no one mentioned A&S, transferred Plaintiff to A&S, or offered Plaintiff A&S by name—the "legal protection plan" was pitched only as an optional add-on to JGW's own program. **Ex. 1**, at 12. The quantum of control the law demands is illustrated by *Rogers*, where imputation turned on a Call Center Marketing Agreement giving the principal the right to assign the caller's tasks and seven pages of

"Standards of Conduct" dictating the wording of marketing, call recording, sales tactics, refunds, and do-not-call scrubbing. 636 F. Supp. 3d at 770–71. The SAC pleads nothing remotely comparable. And it is settled that being a mere beneficiary of a telemarketer's calls is not enough; the seller "must have had the authority to assign tasks and control the means and details of the process by which the ... telemarketer ... conducts its business." *Guadian*, 2023 WL 7393129, at *3. Moreover, every imputation case Plaintiff cites is unpublished, two are magistrate recommendations, and *Tip Top* issued on default without any adversarial testing of the control allegations; none is binding, and none supplies the facts the SAC omits.

Under Texas law, agency "must be affirmatively established" and "may not be presumed"; the plaintiff must show the alleged principal had "the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task." *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998). Federal courts "routinely dismiss claims that rely upon vicarious liability at the pleading stage when insufficient facts have been alleged to establish control." *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 2992881, at *3 (N.D. Tex. July 28, 2022). The SAC alleges only that A&S "retained the right" to control what JGW "could say about A&S" and "could instruct" JGW on how to present A&S's services. SAC ¶¶ 74–76. Those are conclusions, not facts, and they concern the content of JGW's description of A&S—not the manner and means of the calls. The SAC identifies no contract, communication, script, or instruction by which A&S controlled how, when, or whom JGW called. Because it does not plausibly plead the control necessary to attribute JGW's calls to A&S, Count One should be dismissed.

Plaintiff's apparent-authority theory fails as a matter of law. Apparent authority holds a principal accountable only for third-party beliefs that are "traceable to a manifestation of the

principal"; it turns on the conduct of the principal, not the agent, and "[t]he actions or representations of the agent may not be considered." *Dish Network*, 28 FCC Rcd. at 6586 ¶ 34; *Coffey*, 24 F. Supp. 2d at 680. Plaintiff's theory rests entirely on what JGW possessed and did—its possession and transmission of A&S's form agreement and its statements about the legal-protection plan. SAC ¶¶ 82–85. But A&S's provision of a standard engagement form, used to defend referred enrollees who are *already* sued, Arnold Decl. ¶¶ 26–30, is not a manifestation *by A&S to Plaintiff* that JGW was authorized to solicit legal employment on A&S's behalf by telephone. An agent cannot cloak itself with authority by displaying the principal's paperwork; apparent authority cannot arise from the agent's own conduct in holding itself out. *Coffey*, 24 F. Supp. 2d at 680. Apparent authority also requires detrimental reliance, *id.*, and Plaintiff pleads none: he did not execute the A&S agreement, never became A&S's client, and told JGW to "cancel everything." SAC ¶ 102; **Ex. 1**, at 14.

Plaintiff's ratification theory fares no worse. Ratification requires that the principal, "with full knowledge" of the transaction, knowingly accept its benefits. *Coffey*, 24 F. Supp. 2d at 681; *Dish Network*, 28 FCC Rcd. at 6587 ¶ 34. The uncontroverted declaration forecloses both elements: A&S had no knowledge of the October 28, 2025 calls when they were made, received no fee or other benefit from Plaintiff or the calls, and did not ratify, adopt, or affirm JGW's conduct toward Plaintiff. Arnold Decl. ¶¶ 34, 36, 37. There is no benefit to ratify where Plaintiff never retained A&S and A&S was paid nothing.

## III. PLAINTIFF FAILS TO STATE A CIVIL-BARRATRY CLAIM UNDER § 82.0651.

### A. The SAC Pleads No Qualifying Solicitation of Legal Employment by or on Behalf of A&S.

Section 82.0651(c) permits a person "solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03," who did not contract, to sue the person who committed barratry. Tex. Gov't Code Ann. § 82.0651(c) (West). The predicate requires a prohibited solicitation of professional employment—an unrequested communication with a prospective client "concerning professional employment . . . for the purpose of providing professional services." Tex. Penal Code Ann. § 38.01(11) (West). The statute thus requires that the plaintiff "was . . . actually affected by the solicitation"—that a prohibited communication to obtain employment was "directed toward him . . . by or on behalf of an attorney." *Nguyen v. Watts*, 605 S.W.3d 761, 787 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

That requirement is not met here, for two independent reasons. First, the predicate communication must be made "by or on behalf of" the attorney, *id.*, and—for the reasons in Part II.C—the SAC does not plausibly allege that JGW spoke on A&S's behalf or under A&S's control. Absent imputation, JGW's calls are JGW's own. Second, even taken at face value, the call was a solicitation of *JGW's* debt-settlement services, not A&S's legal employment: Plaintiff concedes JGW "marketed its own debt-settlement services," SAC ¶ 117, the legal-protection plan was disclosed as an optional add-on, **Ex. 1**, at 12, and the communication responded to Plaintiff's own online inquiry rather than being unrequested, see Tex. Penal Code § 38.01(11) (excluding requested communications). No A&S representative communicated with Plaintiff at all. Arnold Decl. ¶ 31. A form agreement transmitted afterward by JGW is not a solicitation of legal employment directed to Plaintiff by or on behalf of A&S, and courts dismiss barratry claims that fail to identify prohibited solicitation conduct by the attorney. *Wise v. Wilmoth*, No. 3:16-CV-1039-M-BH, 2017 WL 3267924, at *6 (N.D. Tex. July 3, 2017).

**B. The SAC Pleads No Intent to Obtain Economic Benefit, and the § 38.12(b) Theory Fails Without a § 38.12(a) Predicate.**

Penal Code § 38.12(a) requires that the actor solicit employment "with intent to obtain an economic benefit," and § 38.12(b)(3)—a professional's knowing acceptance of employment resulting from prohibited solicitation—requires a predicate § 38.12(a) violation. Tex. Penal Code Ann. § 38.12(a)–(b) (West); *Pohl v. Cheatham*, 718 S.W.3d 173, 184 (Tex. 2025) ("any offense under subsection (b) requires a predicate finding of . . . an offense under Subsection (a)"). The SAC pleads neither as to A&S. It alleges no facts showing that A&S acted with intent to obtain an economic benefit, that A&S solicited or paid anyone to solicit Plaintiff, or that A&S knowingly accepted employment resulting from a prohibited solicitation. The economic-benefit element is affirmatively negated: Plaintiff "did not execute A&S's Attorney-Client Agreement and did not enter into an attorney-client relationship with A&S," SAC ¶ 102, and A&S received no fee, payment, or other benefit from Plaintiff or the calls, Arnold Decl. ¶ 36. Nor can § 38.12(b)(3) apply, because A&S accepted no employment at all—let alone knowingly accepted employment resulting from a prohibited solicitation. With no § 38.12(a) violation pleaded, the derivative § 38.12(b) theory collapses. *Pohl*, 718 S.W.3d at 184. And as with Chapter 302, the barratry claim depends on attributing JGW's conduct to A&S, which the SAC does not plausibly plead. *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 2992881, at *3 (N.D. Tex. July 28, 2022).

Finally, even if a § 82.0651(c) claim survived—it does not—Plaintiff's prayer overstates the recovery by a factor of five. A plaintiff who proceeds under subsection (c), as one "improperly solicited but did not enter into a legal-services contract," may recover only "the $10,000 statutory penalty, actual damages caused by the prohibited conduct, and attorney's fees." *Pohl*, 718 S.W.3d at 186 n.8 (construing § 82.0651(d)). Plaintiff concedes he never contracted with A&S, SAC ¶ 102, so subsection (c) is the only door open to him—yet the SAC demands a

"$50,000 statutory penalty." SAC ¶ 104, Prayer ¶ C. That demand is unrecoverable as a matter of law and should be dismissed or struck.

**C. Section 82.0651 Does Not Apply to Solicitation That Occurred Outside Texas.**

Independently, the Texas Supreme Court has held that § 82.0651 does not apply extraterritorially. *Pohl v. Cheatham*, 718 S.W.3d 173, 185–86 (Tex. 2025). The analysis identifies the statute's "focus"—"the core conduct the Legislature sought to address," which for § 82.0651 is "the solicitation of a legal-services contract through illegal barratry"—and asks where *that* conduct occurred. *Id.* at 185–86. Because the presumption against extraterritoriality "would be meaningless if any domestic conduct could defeat it," incidental Texas contacts do not save the claim. *Id.* at 186. That focus is the same whether a plaintiff proceeds under subsection (a), as in *Pohl*, or subsection (c), as Plaintiff does here: both turn on the same predicate act of solicitation defined by Penal Code § 38.12 and Rule 7.03.

Here, the only solicitation Plaintiff can attribute to A&S is the conduct of an Oklahoma law firm that placed no call, employed no telemarketers, and directed nothing into Texas; its engagement form is governed by Oklahoma law and provides for arbitration in Oklahoma. Arnold Decl. ¶¶ 6–13, 32. Any soliciting conduct attributable to A&S therefore originated outside Texas. Plaintiff's contrary hook—that he received the call in Texas, SAC ¶¶ 5, 12—is precisely the "incidental" domestic contact *Pohl* holds insufficient; the place of receipt is not the statute's focus. 718 S.W.3d at 186. To the extent Count Two rests on solicitation conduct occurring outside Texas, *Pohl* bars it.

**IV. FURTHER AMENDMENT WOULD BE FUTILE, AND DISMISSAL SHOULD BE WITH PREJUDICE.**

This is Plaintiff's third pleading of the same facts. He filed an original complaint, amended once in response to a motion identifying these precise deficiencies, and—after the A&S

defendants again moved to dismiss—has now amended a second time. Each time, Plaintiff has been told that he must plead facts showing A&S controlled JGW's solicitation, and each time he has answered with the same labels dressed in new words. This is not, moreover, Plaintiff's first telephone-solicitation suit arising from these parties and this conduct: he sued A&S and JGW on materially the same theory in *Cacho v. JGW Debt Settlement, LLC*, No. 3:25-cv-00142-LS-LE (W.D. Tex.), SAC ¶¶ 7, 33–35, and so brings to this pleading the benefit of a prior round of litigation over the same alleged calls. A litigant that well acquainted with the control requirement, who still cannot plead it after three tries, has shown that the facts do not exist. Leave to amend may be denied where a plaintiff has repeatedly failed to cure deficiencies of which he had notice, or where further amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) (futility measured by the Rule 12(b)(6) standard).

A&S recognizes that a *pro se* plaintiff is ordinarily afforded an opportunity to amend before a dismissal with prejudice. But that rule yields "[when] it is obvious from the record that the plaintiff has pled his best case." *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (*per curiam*); accord *Ricks v. Khan*, 135 F.4th 296, 300–01 (5th Cir. 2025). Where a plaintiff has already amended multiple times without curing identified defects, the Fifth Circuit routinely affirms dismissal with prejudice as no abuse of discretion. See *Stripling*, 234 F.3d at 873. The problem here is not one of wording but of the absence of facts: A&S did not place the calls, no A&S representative ever spoke with Plaintiff, and Plaintiff's own transcript shows a consumer-initiated debt-resolution enrollment. Three pleadings in, Plaintiff has pled his best case, and further amendment would be futile. The Rule 12(b)(6) dismissal should accordingly be with

prejudice and without leave to amend; any dismissal under Rule 12(b)(2) should be without prejudice, as Fifth Circuit law requires.

## CONCLUSION

The SAC changes the caption but not the case. A&S did not call Plaintiff, and Plaintiff's own exhibit shows a debt-resolution enrollment he initiated and then cancelled—not an unlawful solicitation of legal employment that A&S made, controlled, or procured. The SAC pleads no suit-related Texas contact A&S itself created, no facts attributing JGW's calls to A&S, no privately recoverable Chapter 302 violation, and no qualifying barratry. On this record, dismissal is required under both *Walden v. Fiore*, 571 U.S. 277 (2014), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—and, three pleadings in, it should be with prejudice.

**WHEREFORE**, Defendant Arnold & Smith Law, PLLC respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint in its entirety—under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim, with prejudice and without further leave to amend—and grant A&S such other and further relief to which it may be entitled.

Dated: October 9, 2026,

Respectfully submitted,

/s/ Robert R. Titus
Robert R. Titus, SBN 24081470
**TITUS LAW FIRM, LLC**
7304 W. 130th Street, Suite 190
Overland Park, Kansas 66213
T (913) 359-6641
F (913) 599-9238
rob@tituslawkc.com
***Attorney for Defendant Arnold & Smith Law, PLLC***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic-filing system upon all attorneys of record, and by the method noted upon any party not represented by counsel, on October 9, 2026.

**JOSHUA CACHO**
P.O. Box 26971
El Paso, Texas 79926
***Plaintiff, Pro Se***

*/s/ Robert R. Titus*
Robert R. Titus, SBN 24081470