**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** Plaintiff, v. **ARNOLD & SMITH, PLLC,** Defendant. | § | **3:26-cv-00309-LS** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE LEON SCHYDLOWER:

Comes Now Plaintiff Joshua Cacho with his response to Defendant Arnold & Smith Law, PLLC's ("A&S") Motion to Dismiss ("MTD") Plaintiff's Second Amended Complaint ("SAC") and will state and show as follows:

## I. Introduction

This is A&S's latest attempt to make the identity of the caller more important than the authority behind the call. Its motion opens with the refrain that "A&S did not call Plaintiff." But the Second Amended Complaint alleges that A&S authorized JGW Debt Settlement, LLC ("JGW") to solicit its legal services and retained the right to control their presentation. Physical dialing does not resolve that allegation. The disputed question is whether JGW acted with A&S's authority and subject to its control.

The complaint identifies the conduct supporting that inference: JGW recommended legal

protection based on Plaintiff's circumstances, quoted its monthly price, and delivered A&S's attorney-client agreement naming Plaintiff. SAC ¶¶ 64-78. These allegations require examination of the parties' relationship. Counting Plaintiff's amendments does not answer them.

The motion also conflates Plaintiff's earlier loan inquiry with the separate October 28, 2026, sales call. JGW initiated that later call and introduced debt relief before Plaintiff requested additional information. ECF No. 33-1 at 2-4. His response to JGW's pitch does not conclusively establish that he requested a separate solicitation of A&S's legal services.

Finally, A&S challenges Plaintiff's $50,000 demand by invoking the former $10,000 penalty. The Legislature amended § 82.0651(d)(1), and the increased penalty applies to this action. Plaintiff must prove liability, but his demand follows the applicable statute.

Plaintiff requests denial of the motion. Alternatively, he requests targeted jurisdictional discovery before the Court resolves the disputed authority and control issues against him.

**II. A&S's declaration does not replace the pleading standard**

A&S's denial of an allegation is not a finding that the allegation is implausible. Its motion invokes two rules requiring separate treatment.

Under Rule 12(b)(6), the Court accepts well-pleaded facts and draws reasonable inferences in Plaintiff's favor. Plaintiff must plausibly allege agency; he need not conclusively prove the parties' internal relationship before discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007).

The Court may consider documents referenced in the complaint and central to its claims. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). The October 28 transcript describes the recommended legal service; the resulting agreement identifies A&S as its provider and states its price and terms. ECF No. 33-1; Ex. C. Those documents should be read

together.

Arnold's declaration is evidence for the jurisdictional challenge. Its disputed assertions about internal authority, however, cannot simply replace the SAC's allegations in the merits analysis. Unless a recognized exception applies, reliance on outside evidence to decide the merits requires conversion under Rule 12(d) and a reasonable opportunity to present pertinent material. Plaintiff requests exclusion of the declaration from the Rule 12(b)(6) determination rather than conversion before discovery.

Under Rule 12(b)(2), Plaintiff must make a prima facie showing when the Court proceeds without a full evidentiary hearing. Genuine factual conflicts in the evidence are resolved in his favor at that stage. *Walk Haydel & Associates, Inc. v. Coastal Power Production Co*., 517 F.3d 235, 241-42 (5th Cir. 2008). Plaintiff relies on the documented transaction and requests focused discovery if that evidence is insufficient.

Exhibit A supplies the October 14 transcript; Exhibit B supplies Plaintiff's declaration; and Exhibit C supplies A&S's agreement, authorization form, and the first page of the DocuSign completion certificate. Exhibit A and the declaration support the jurisdictional record; they do not themselves amend the SAC.

**III. JGW introduced the sales discussion before Plaintiff requested information**

**A. The earlier loan inquiry and the October 28 solicitation were separate conversations.**

A request for a personal loan did not become a request for debt settlement merely because JGW later called to sell it.

During the October 14, 2026, conversation, Plaintiff explained that he wanted a small personal loan and was not seeking credit-card consolidation. Ex. A at A-5-A-7. During the

separate October 28 call, he again explained that the earlier inquiry concerned a loan and that he had rejected debt settlement. ECF No. 33-1 at 4.

JGW initiated the October 28 call. Caleb asked about Plaintiff's outstanding debt, whether he was receiving assistance, and offered to explain how JGW could help. He transferred Plaintiff to Lewis, who discussed specific accounts and whether Plaintiff was still trying to resolve them. Only afterward did Plaintiff express possible interest and request additional information. *Id.* at 2-4.

Plaintiff acknowledges his subsequent discussion of payment terms and provision of banking information. *Id.* at 4-14. His purpose in requesting information was to identify those responsible for the call, not to enroll. Ex. B ¶ 5. That explanation supplements the objective chronology: JGW introduced the sales discussion before Plaintiff requested more information.

Exhibit A includes an interruption involving National Debt Relief. Plaintiff relies on his statements to JGW after returning to Damon, not statements during that separate exchange. The exhibit establishes the earlier loan request and rejection of consolidation; Plaintiff does not represent that it independently proves an express do-not-call instruction.

**B. A&S's legal service was a distinct offer**

A request concerning JGW's debt-settlement program did not necessarily encompass solicitation of a separately priced legal service.

Chapter 302 addresses calls initiated to induce a purchase and includes certain purchaser-initiated calls responding to earlier solicitations. Tex. Bus. & Com. Code § 302.001(7). Participation in the conversation does not alone eliminate its sales purpose.

Barratry requires a separate inquiry because Penal Code § 38.01(11) excludes requested communications. The issue is the scope of Plaintiff's request, assessed against the actual

conversation and the distinct service offered.

JGW recommended legal protection based on Plaintiff's accounts and potential litigation exposure and quoted an approximately $18 monthly charge. ECF No. 33-1 at 11-12. The agreement delivered during enrollment identified A&S, named Plaintiff, and specified a $17.99 monthly fee for availability to defend covered litigation. Ex. C at C-1-C-2; SAC ¶¶ 65-68, 98-102.

The agreement contemplated prospective coverage for qualifying lawsuits commenced after execution concerning debt enrolled before suit. Ex. C at C-1-C-2. JGW therefore did more than identify an attorney Plaintiff might contact later: it recommended a paid service and delivered the instrument through which he could retain it.

Plaintiff did not execute the agreement. The DocuSign certificate identifies JGW Debt Resolution as originator, records October 28 delivery, and reports zero signatures. *Id.* at C-6. The reproduced attorney signature images do not establish contemporaneous execution. *Id.* at C-4. Plaintiff relies on these documents as evidence of the offer and enrollment mechanism, not completed retention or coverage for an already-pending lawsuit.

## IV. The agency inquiry concerns the authority governing the solicitation

### A. The complaint identifies an alleged client-acquisition assignment

The agency allegation rests on a coordinated transaction, not merely A&S's name appearing on paperwork.

Agency requires the right to assign the task and control the means and details of its performance. *Rogers v. National Car Cure, LLC*, 636 F. Supp. 3d 762, 769-71 (S.D. Tex. 2022). The right to give interim instructions is likewise relevant. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 WL 7393129, at *3-4 (W.D. Tex. Nov. 8, 2023), adopted,

2023 WL 8242475 (W.D. Tex. Nov. 28, 2023).

A&S emphasizes who operated the telephones, selected recipients, and employed the callers. ECF No. 33 at 6-7, 12-14. Those facts matter, but the alleged assignment was presenting A&S's legal service and facilitating enrollment. A right to instruct JGW how to describe, recommend, and offer that service would concern performance of that assignment.

The SAC supports that inference with JGW's evaluation of Plaintiff's circumstances, recommendation of legal protection, corresponding recurring fee, and delivery of A&S's personalized agreement within the same enrollment process. SAC ¶¶ 64-78. Control over A&S's own prices and contract terms is not alone enough; Plaintiff relies on the process as a whole.

In *Salaiz,* collection of consumer information and transfer to the defendant's representative supported an inference of authority to find clients. *Salaiz v. Beyond Finance, LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at *4 (W.D. Tex. Sept. 18, 2023). Here, the alleged mechanism was JGW's presentation of the service and delivery of the corresponding A&S engagement agreement. The absence of a live transfer does not substitute for evaluating that mechanism.

A&S also emphasizes contract issuance in Forteza and personal oversight in *Tip Top*. ECF No. 33 at 13-14. Those distinctions do not establish agency here, but neither do they make each fact indispensable in every case. Plaintiff asks the Court to evaluate the authority and control reasonably inferable from this transaction.

**B. Arnold disputes authority; the operating arrangement remains material**

Calling the form's provision or authorized use "administrative" does not disclose the authority governing its use.

The agreement states that A&S is not affiliated with a debt-settlement company. Ex. C at

C-2. Plaintiff alleges limited agency concerning solicitation and enrollment, not common corporate identity. The clause does not itself disclose the parties' operative rights and duties.

Arnold expressly denies solicitation authority and a right to control JGW's presentation of A&S's services. Arnold Decl. ¶¶ 24-27. Paragraph 31 identifies the agreement as A&S's standard form and characterizes providing or authorizing its use as administrative. Plaintiff does not treat that statement as an admission that A&S authorized these calls.

The disputed issue is the scope of any authority governing JGW's documented use of A&S's services and form. The declaration supplies no underlying operating agreement explaining that arrangement. For Rule 12(b)(6), the Court must assess the pleaded facts. For Rule 12(b)(2), Plaintiff requests discovery directed to the specific authority Arnold denies.

Actual authority also remains distinct from apparent authority and ratification. Plaintiff does not claim that later receipt of the agreement induced him to answer the call, or that continuing a business relationship automatically ratified subsequent calls. SAC ¶¶ 79-80 provide context. Any deficiency in reliance or ratification must be evaluated separately from authority existing when JGW made the offer.

C. The alleged forum contact is the challenged solicitation

Plaintiff relies on an allegedly authorized solicitation into Texas—not the proposition that an unsigned agreement with a Texas resident automatically creates jurisdiction.

*Walden v. Fiore* requires defendant-created contacts. 571 U.S. 277, 284-86 (2014). Plaintiff's theory therefore depends on attributing JGW's conduct to A&S through the alleged agency relationship. *See Rogers*, 636 F. Supp. 3d at 768-71.

The Texas connection is more than a displayed area code. Plaintiff received the calls in Texas, and Caleb confirmed his continuing income in Texas before proceeding. SAC ¶¶ 1, 8;

ECF No. 33-1 at 2. Plaintiff relies on solicitation directed to that identified consumer within Texas, not an inference that the caller was physically located there.

A&S's reliance on *Moncrief, McFadin, and Holt Oil* does not eliminate the attribution inquiry. ECF No. 33 at 9-10. Plaintiff accepts that a contract with a forum resident and incidental communications do not alone establish purposeful availment. *See Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 311-12 (5th Cir. 2007); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). His claim instead challenges the allegedly authorized solicitation itself.

The agreement corroborates that transaction; it does not replace purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985). Nor does Ford's relationship requirement excuse proof of purposeful contacts. *Ford Motor Co. v. Montana* E*ighth Judicial District Court*, 592 U.S. 351, 359-62 (2021).

The proposed Oklahoma provisions do not establish who authorized the solicitation or where it was directed. If attributable, purposeful solicitation into Texas is established, A&S's Oklahoma location alone does not make jurisdiction unreasonable. *See Burger King*, 471 U.S. at 476-77.

**D. Targeted discovery would test the disputed authority and control**

Plaintiff seeks the operating evidence for an identified relationship and transaction, not an unrestricted search for jurisdiction.

If the existing record is insufficient, Plaintiff requests 60 days of limited jurisdictional discovery. The requested evidence bears directly on authority and control. *See Monkton Insurance Services, Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).

Discovery would address, as of October 28, 2025:

1. Agreements governing A&S-JGW referrals, promotion, enrollment, use of A&S's form, and rights to give instructions.
2. Instructions, approved descriptions, eligibility criteria, and communications governing presentation of the $17.99 service to Texas consumers.
3. Records identifying who supplied, approved, populated, or authorized A&S's agreement in Plaintiff's DocuSign envelope.
4. Terms governing the legal fee and any right to restrict or discontinue JGW's use of A&S's agreement.

After production, Plaintiff requests one Rule 30(b)(6) deposition of A&S, limited to three hours and these subjects. Necessary nonparty discovery from JGW would concern the same relationship and transaction. Plaintiff seeks operating terms and transaction records, not privileged legal advice or unrelated client files.

These materials would test Arnold's denials and determine whether the enrollment process was authorized and subject to instructions. Plaintiff requests deferral of the jurisdictional ruling and 14 days after discovery to supplement his opposition.

**V. Chapter 302 addresses authorized solicitation and qualifying attempts**

**A. Plaintiff identifies the registration duty and its enforcement route**

A&S's physical absence from the telephone does not answer a claim based on solicitation by its alleged authorized salesperson.

Section 302.101 imposes the registration requirement. Section 302.001(4) recognizes a salesperson employed or authorized by a seller, and § 302.002 includes attempts to effect a solicitation. Agency principles may permit attribution of the telemarketer's conduct to the seller. *Guadian,* 2023 WL 7393129, at *4.

Plaintiff invokes § 302.303 as the statutory vehicle for enforcing § 302.101 through the rights and remedies it incorporates. He does not contend that § 302.101 independently supplies an express private cause of action. He separately preserves his argument that the civil penalty is recoverable.

The SAC alleges lack of registration, solicitation of A&S's service, and facts supporting attribution. SAC ¶¶ 54-55, 59-78, 90-93. An optional service remains a service offered for purchase, and the definition of purchaser includes a person solicited to become obligated. Tex. Bus. & Com. Code § 302.001(3).

**B. Each call should be evaluated on the conduct alleged**

An unanswered or disconnected call is not a completed sales conversation, but § 302.002 also addresses attempted solicitations.

Plaintiff missed the first call, the second disconnected after he answered, and the third produced the completed conversation. All occurred on October 28 and displayed the same number. SAC ¶¶ 41-43, 52.

Plaintiff alleges successive attempts in the same solicitation effort. The common date and number, followed by the identified JGW solicitation, support that proposed inference. The completed conversation supplies direct evidence of the legal-service pitch; Plaintiff does not claim that the same words were spoken during the earlier calls.

Purpose and attribution must still be established for each claimed violation. Any insufficiency concerning the first two calls should therefore be assessed separately from the documented solicitation during the third.

**C. The cited decisions support preserving the penalty issue**

A&S asks the Court to reject a remedy that a decision it cites has awarded.

*In Callier v. Tip Top Capital Inc*., No. EP-23-CV-437-KC, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024), the court applied agency principles to a Chapter 302 registration claim and awarded $5,000 per violation on default. That posture limits the decision's force in this contested dispute, but it supports preservation of the requested remedy.

*Callier v. Unified Health, LLC* left the penalty question open as premature. No. EP-23-CV-375-KC, 2024 WL 3418778, at *7 & n.3 (W.D. Tex. July 15, 2024). Plaintiff requests the same treatment. He seeks up to the statutory maximum for each proven violation, not an automatic maximum award.

The alternative damages issue remains distinct. SAC ¶¶ 86-89 allege privacy intrusion, lost time, and interference with telephone use; those allegations do not automatically establish compensable DTPA mental anguish or economic loss. If the Court rejects the penalty remedy and finds the injury allegations insufficient, Plaintiff requests an opportunity to seek amendment with additional facts he can truthfully support. That issue does not dispose of the separate barratry claim, and Plaintiff does not rely on declaratory relief to enlarge the statutory remedies.

## VI. The barratry claim concerns solicitation, not completed retention

### A. Intent to obtain a fee does not require receipt of the fee

Plaintiff's refusal to sign does not defeat a claim under the provision expressly addressing qualifying solicitation that produced no contract.

Section 82.0651(c) provides the non-contracting plaintiff's remedy. The alleged offer involved professional representation, a recurring legal fee, and an agreement identifying A&S as the provider. SAC ¶¶ 94-104; Ex. C at C-1-C-2. The transcript and agreement identify the service together. Failure to speak A&S's name during the call does not conclusively disconnect the offer from the provider identified in the ensuing proposal.

Penal Code § 38.12(a)(2) requires solicitation with intent to obtain an economic benefit. The proposed recurring payment supports the alleged intent; Plaintiff's subsequent cancellation does not itself negate it. SAC ¶ 101.

Plaintiff relies on the alleged solicitation under § 38.12(a)(2), not a claim that A&S accepted employment under § 38.12(b)(3) despite his refusal to retain it.

**B. Rule 7.03 requires examination of the actual communication**

The scope of Plaintiff's request must be determined from the conversation, not assumed from his willingness to hear about debt settlement.

Rule 7.03(a)(1) addresses live or electronically interactive contact initiated by a lawyer or a person acting on a lawyer's behalf. Subsection (b) restricts solicitation of professional employment from a nonclient, subject to specified exceptions.

Plaintiff alleges that JGW initiated the call, acted with A&S's authority, and recommended paid representation based on his circumstances. He had no attorney-client relationship with A&S. SAC ¶¶ 96103. The personalized recommendation and recurring fee support the alleged professional and economic purpose.

Comment 2 excludes communications responding to a request for information. Plaintiff therefore does not rely on the outbound nature of the call alone. He disputes that his request concerning JGW's program encompassed the separate legal-service solicitation. The existing allegations do not establish that he falls within Rule 7.03(b)'s listed exceptions.

This theory concerns the live solicitation. The subsequent agreement identifies and corroborates the service offered; emailing an engagement proposal alone is not the asserted violation of Rule 7.03(b).

**C. A&S's headquarters do not establish where the entire solicitation occurred**

An Oklahoma address does not, by itself, place an interstate communication exclusively outside Texas.

*Pohl v. Cheatham* concerned out-of-state clients approached in Louisiana and Arkansas about out-of-state matters. Texas activity by the lawyers did not bring those foreign solicitations within § 82.0651. 718 S.W.3d 173, 185-86 (Tex. 2025).

Here, Plaintiff alleges a solicitation received in Texas after JGW confirmed his Texas connection. SAC ¶¶ 1, 6-10, 97-100. His position is that the communication seeking his retention of A&S occurred in part in Texas, rather than that incidental Texas activity saves a solicitation completed elsewhere.

*Pohl* did not decide that an interstate telephone solicitation necessarily occurs exclusively where the speaker or principal is located. A&S's Oklahoma headquarters and proposed contract terms therefore do not establish its defense by themselves. Attribution and personal jurisdiction remain separate requirements.

**D. The governing statute provides a $50,000 penalty**

A&S's objection to the amount demanded applies a statutory figure the Legislature replaced.

The Legislature amended § 82.0651(d)(1) to provide a $50,000 penalty for a prevailing non-contracting plaintiff. Acts 2025, 89th Leg., R.S., ch. 1168 (H.B. 4325), §§ 1-3. The amendment applies to actions filed on or after September 1, 2025. This action was filed in 2026.

Pohl's discussion of the former $10,000 amount does not override the amendment. Plaintiff must establish liability, but the superseded amount provides no basis to strike his demand.

## VII. Requested relief

The disposition must follow the identified legal or factual deficiency, not merely the number of prior pleadings.

Plaintiff requests denial of ECF No. 33. Alternatively, he requests the limited jurisdictional discovery described above and leave to supplement before a Rule 12(b)(2) ruling.

If the Court identifies a curable pleading deficiency, Plaintiff requests an opportunity to seek leave under Rule 15(a)(2) with a proposed amendment addressing that defect, including relevant solicitation facts, agreement terms, and authority evidence. He does not assume an unlimited right to replead.

The earlier action's April 2025 filing, standing alone, does not establish that the October calls were previously litigated. Its relevance and any later proceedings must be assessed from the actual record. ECF No. 33 at 19.

If personal jurisdiction is lacking, dismissal should be without prejudice, as A&S acknowledges. Id. at 20. A jurisdictional dismissal should not become an adjudication with prejudice of the merits.

November 06, 2026,

Respectfully submitted,

Joshua Cacho

Joshua Cacho
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served on all parties via the Court's electronic filing system.

November 06, 2026,

Respectfully Submitted,

Joshua Cacho

Joshua Cacho
Plaintiff, Pro Se